1
2
3
4
5
6            IN THE UNITED STATES DISTRICT COURT
7          FOR THE NORTHERN DISTRICT OF CALIFORNIA
8
9  KYM PARDINI, on behalf of      ) Case No. 13-1675 SC
10 herself and other others       )
   similarly situated,            ) ORDER GRANTING MOTION TO
11                                 ) DISMISS
           Plaintiff,             )
12                                 )
        v.                        )
13                                 )
   UNILEVER UNITED STATES, INC.,  )
14                                 )
           Defendant.             )
15 _____)
16

**United States District Court**
For the Northern District of California

17 **I.   INTRODUCTION**

18     Plaintiff Kym Pardini ("Plaintiff") brings this putative class
19 action in connection with Defendant Unilever United States, Inc.'s
20 ("Defendant") marketing of I Can't Believe It's Not Butter! Spray.
21 Plaintiff alleges that the product is deceptively marketed as
22 having "0 fat" and "0 calories," since it in fact contains 771
23 calories and 82 grams of fat per bottle.  ECF No. 1 ("Compl.") ¶¶
24 4-5.  Defendant now moves to dismiss pursuant to Federal Rule of
25 Civil Procedure 12(b)(6).  ECF No. 13 ("Mot.").  The Motion is
26 fully briefed, ECF Nos. 15 ("Opp'n"), 17 ("Reply"), and appropriate
27 for determination without oral argument per Civil Local Rule 7-
28 1(b).  For the reasons described below, the Motion is GRANTED.

**II.   BACKGROUND**

   As it must on a Rule 12(b)(6) motion to dismiss, the Court takes all well-pleaded allegations as true.  I Can't Believe It's Not Butter! is the second largest margarine brand in the United States.  Compl. ¶ 15.  The product at issue in this case, I Can't Believe It's Not Butter! Spray ("ICBINBS") is marketed as a "0 Calorie" and "0 Fat" alternative to butter.  Id. ¶ 16.  The Court takes judicial notice of the fact that the product is dispensed via manual pump, with each pump delivering a squirt of oil.  See Compl. Figure 2 ("Front Label").

   The front label of the ICBINBS packaging prominently states that the product is "Great for Topping & Cooking" and contains "0 Calories per serving" and "0 g Trans Fat* per serving."  Id.  The asterisk refers to an explanatory phrase printed in smaller type immediately below: "Contains 0 g fat (0 g saturated fat), and 0 g trans fat per serving, see nutrition information for serving size."[1]  Id.

   The back of the packaging displays the "nutrition panel," which states "Calories 0" and "Calories from Fat 0."  Compl. Figure 1 ("Back Label").  The nutrition panel states that the serving size is "1 Spray (0.20g) Cooking Spray" or "5 Sprays (1g) per Topping."  Id.  The nutrition panel also discloses the fat, cholesterol, and sodium per serving and the product's ingredients.  Id.  The first three listed ingredients are water, liquid soybean oil, and sweet

---

[1] Certain aspects of the label attached to the Complaint are practically illegible (including the explanatory phrase "Contains 0 g fat . . ." and the net weight of the container), though the parties do not dispute the label's contents.  The Court advises Plaintiff to file legible images of product labels going forward.

cream buttermilk.   Id.

Plaintiff claims that Defendant's "0 Fat" and "0 Calorie" representations are false and misleading because the listed serving sizes fail to account for the manner in which ICBINBS is customarily used.   Compl. ¶ 6.   Essentially, Plaintiff alleges that Defendant has set an artificially small serving size so that the calories and fat per serving can be rounded down to zero. Plaintiff alleges that each bottle of ICBINBS actually contains 771 calories and 82 grams of fat, id. ¶ 4, meaning that each 340-gram container is about 24 percent fat by weight, each recommended serving of cooking spray (one spray) contains about 0.45 calories and 0.048 grams of fat, and each recommended serving of topping (five sprays) contains about 2.27 calories and 0.24 grams of fat.[2] Plaintiff also alleges that the label does not disclose that ICBINBS contains ingredients that are fats and which, even in small quantities, add certain amounts of fat and calories per serving. Id. ¶¶ 5-7.   Plaintiff alleges that the soybean oil and buttermilk ingredients listed in the nutrition panel should have been followed by an asterisk and language disclosing the presence of fat.   Id. ¶ 31.

Plaintiff asserts that Defendant violated the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 et seq., and its implementing regulations by (1) failing to adequately disclose the level of fat and calories per serving in accordance with 21 U.S.C.

_____

[2] The Court arrived at the fat and calories per serving by dividing the total amount of fat and calories per container by the number of servings per container (1700 cooking spray and 340 topping).  See Back Label.  The Court assumes that each container holds 340 grams of ICBINBS since, according to the nutrition panel, each spray weighs 0.20 grams and there are 1700 sprays per container.

**United States District Court**
For the Northern District of California

1   § 343(q), and 21 C.F.R. § 101.9(b)(1); and (2) making "fat free"

2   and "zero calorie" nutrient content claims in violation of 21

3   U.S.C. § 343(r), 21 C.F.R. §§ 101.13(b), 101.62(a)(3), and

4   101.60(a)(3).

5       Plaintiff seeks to certify a nationwide class of all persons

6   who purchased ICBINBS and a subclass of all persons in the state of

7   California who purchased the product.  Id. ¶ 48-49.  The Complaint

8   asserts causes of action for (1) unjust enrichment/common law claim

9   for restitution; (2) fraud by concealment; (3) breach of express

10  warranty; (4) intentional misrepresentation; (5) violation of the

11  California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §

12  1750 et seq.; (6) violation of the California Unfair Competition

13  ("UCL"), Cal. Bus & Prof. Code § 17200 et seq.; and (7) violation

14  of the consumer protection acts of the various states.  Plaintiff

15  prays for compensatory and punitive damages, restitution, interest,

16  attorneys' fees, costs, and injunctive relief.

17      Defendant now moves to dismiss for failure to state a claim

18  pursuant to Federal Rule of Civil 12(b)(6).

19

20  **III. <u>LEGAL STANDARD</u>**

21      A motion to dismiss under Federal Rule of Civil Procedure

22  12(b)(6) "tests the legal sufficiency of a claim."  <u>Navarro v.</u>

23  <u>Block</u>, 250 F.3d 729, 732 (9th Cir. 2001).  "Dismissal can be based

24  on the lack of a cognizable legal theory or the absence of

25  sufficient facts alleged under a cognizable legal theory."

26  <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699 (9th Cir.

27  1988).  "When there are well-pleaded factual allegations, a court

28  should assume their veracity and then determine whether they

plausibly give rise to an entitlement to relief." <u>Ashcroft v.</u>
<u>Iqbal</u>, 556 U.S. 662, 679 (2009).  However, "the tenet that a court
must accept as true all of the allegations contained in a complaint
is inapplicable to legal conclusions.  Threadbare recitals of the
elements of a cause of action, supported by mere conclusory
statements, do not suffice."  <u>Id.</u> (citing <u>Bell Atl. Corp. v.</u>
<u>Twombly</u>, 550 U.S. 544, 555 (2007)).

Claims sounding in fraud are subject to the heightened
pleading requirements of Federal Rule of Civil Procedure 9(b),
which requires that a plaintiff alleging fraud "must state with
particularity the circumstances constituting fraud."  <u>See</u> <u>Kearns v.</u>
<u>Ford Motor Co.</u>, 567 F.3d 1120, 1124 (9th Cir. 2009).  "To satisfy
Rule 9(b), a pleading must identify the who, what, when, where, and
how of the misconduct charged, as well as what is false or
misleading about [the purportedly fraudulent] statement, and why it
is false."  <u>United States ex rel Cafasso v. Gen. Dynamics C4 Sys.,</u>
<u>Inc.</u>, 637 F.3d 1047, 1055 (9th Cir. 2011) (quotation marks and
citations omitted).

**IV.  <u>DISCUSSION</u>**

Defendant moves to dismiss on the grounds that Plaintiff's
claims are preempted or, alternatively, that Plaintiff has failed
to state a claim due to various pleading defects.  The Court
addresses Defendant's preemption argument first and then turns to
its arguments concerning specific pleading defects.

**A.  <u>Preemption</u>**

The FDCA, as amended by the Nutrition Labeling and Education
Act of 1990 ("NLEA"), sets forth a comprehensive set of food

**United States District Court**
For the Northern District of California

labeling requirements.  <u>See</u> 21 U.S.C. § 343.  The many subsections

of 21 U.S.C. § 343 establish the conditions under which food is

considered "misbranded."  Sections 343(q) and 343(r) regulate the

information that must be included in all packed products' nutrition

panel as well as all other nutrient content claims that appear

elsewhere on the label.  The FDCA contains a broad preemption

provision which prohibits states or other political subdivisions

from directly or indirectly establishing any requirement for

nutrition labeling that is not identical to the requirements set

forth in § 343(q) or § 343(r).  <u>Id.</u> § 343-1(a)(4)-(5).

Here, Defendant argues that all of Plaintiff's claims are

preempted because they impose requirements that are not identical

to the FDCA and regulations promulgated by the U.S. Food and Drug

Administration ("FDA") pursuant to the FDCA.  Specifically,

Defendant argues that the FDCA preempts Plaintiff's claims that:

(1) Defendant used artificially small serving sizes to understate

the amount of calories and fat contained in ICBINBS; (2) Defendant

made unlawful "0 Fat" and "0 Calories" nutrient content claims; and

(3) Defendant omitted the asterisk and explanatory notation

required when making "0 fat" claims on the front label.

Alternatively, Defendant argues that Plaintiff's claims are

preempted because the FDCA does not provide for a private right of

action.

### 1. <u>Plaintiff's "Serving Size" Claim</u>

Where a single serving of a particular product contains less

than 0.5 grams of fat, FDA regulations provide that the product's

label shall express the fat content per serving as zero.  21 C.F.R.

§ 101.9(c)(2).  Likewise, calories per serving may be expressed as

**United States District Court**
For the Northern District of California

1  zero where a product contains less than five calories per serving.

2  Id. § 101.9(c)(1). The crux of Plaintiff's serving size claim is

3  that Defendant used unlawful serving sizes so that it could round

4  down to zero ICBINBS's fat and calories per serving. The FDCA

5  provides that a food label must list "the serving size which is an

6  amount customarily consumed and which is expressed in a common

7  household measure that is appropriate to the food." 21 U.S.C. §

8  343(q)(1)(A)(i). Plaintiff alleges that the suggested serving

9  sizes for ICBINBS -- one spray (or 0.20 grams) for "Cooking Spray,"

10 and five sprays (or 1.0 grams) for "Topping" -- are smaller than

11 the amount customarily consumed. Compl. ¶¶ 25-26.

12     Defendant contends that Plaintiff's serving size claim is

13 preempted since ICBINBS's serving sizes are consistent with FDA

14 regulations. Mot. at 4-5. Specifically, Defendant points to 21

15 C.F.R. § 101.12, which sets forth the reference amounts customarily

16 consumed per eating occasion (the "Reference Amount") for various

17 categories of food products. Id. According to that regulation,

18 the Reference Amount for "Fats and Oils: Spray types" is 0.25

19 grams. 21 C.F.R. 101.12(b) (Table 2). Defendant argues that

20 "[b]ecause [ICBINBS] is labeled as a spray and functions as a

21 spray, it is a spray, and therefore must be categorized in this

22 group." Mot. at 5. Defendant contends that the "Cooking Spray"

23 and "Topping" serving sizes listed in ICBINBS's nutrition facts

24 comply with the 0.25-gram Reference Amount for "Fats and Oils:

25 Spray types." Id. Defendant argues that at 1.0 grams, the five

26 spray "Topping" serving size is four times the required amount.

27 Mot. at 5. At one spray (0.20 grams), the "Cooking Spray" serving

28 size is slightly smaller than the 0.25-gram Reference Amount.

1  However, Defendant argues that the listed serving size is a proper

2  translation of the Reference Amount pursuant to the regulation,

3  id., which provides that "[m]anufacturers are required to covert

4  the [Reference Amount] to the label serving size in a household

5  measure most appropriate to their specific product,"  21 C.F.R. §

6  101.12(b) n.3.

7      Plaintiff responds that, to the extent that ICBINBS could be

8  considered a "spray," the label expressly violates FDA regulations

9  by using a serving size of one spray (0.20 grams), which is lower

10 than the 0.25-gram Reference Amount for "Fats and Oils: Spray

11 types."  The Court disagrees.  First, it would not make any sense

12 for Defendant to list a serving size of 1.25 sprays (0.25 grams),

13 since a consumer could not dispense a quarter of a spray.  Second,

14 and more importantly, the fat and calorie content of a 0.25-gram

15 serving of ICBINBS must still be rounded down to zero.  So long as

16 the basic laws of physics apply, there is no possible way that 0.25

17 grams of any substance could have more than 0.5 grams of fat.  See

18 21 C.F.R. § 101.9(c)(2) (less than 0.5 grams of fat must be rounded

19 down to zero).  Further, assuming that each 340-gram container of

20 ICBINBS contains 771 calories, then a 0.25-gram serving would

21 contain 0.57 calories -- far less than five calories.  See 21

22 C.F.R. § 101.9(c)(1) (less than five calories may be rounded down

23 to zero).

24     Next, Plaintiff argues that ICBINBS belongs in FDA's "butter,

25 margarine, oil, and shortening" category, not the "spray type"

26 category.  Opp'n at 7.  FDA regulations provide that the Reference

27 Amount for the "butter, margarine, oil, and shortening" category is

28 one tablespoon, 21 C.F.R. § 101.12(b) (Table 2), and FDA inspection

1   guidelines describe products falling into this category as "[a]ll
2   types of butter and margarine (regular, diet, liquid, and whipped);
3   spreads; oils, and shortenings."  ECF No. 16 ("Berman Decl.") Ex. 2
4   ("FDA Inspection Guidelines") at 6.  Plaintiff argues that
5   Defendant's attempt to classify ICBINBS as a spray type conflicts
6   with § 101.12(b), which purportedly "declares that 'spray type'
7   servings are measured by the second."  Opp'n at 6.  Plaintiff
8   contends that the "spray types" category was intended to encompass
9   only aerosol, non-stick cooking sprays such as PAM, which is sold
10  in pressurized metal canisters in the accessories area of grocery
11  stores, and which emits a continuous, fine mist that dispenses
12  trivial amounts of product that lubricates cookware.  Id.
13  Plaintiff argues that ICBINBS is nothing like PAM since: (1)
14  ICBINBS's quantity cannot be measured by the second since it is
15  dispensed via manual pump; (2) ICBINBS is sold in plastic bottles
16  alongside butter and margarine; (3) ICBINBS is not used as a
17  "nonstick cooking spray"; and (4) ICBINBS is used as a "topping,"
18  while PAM is not.  Id. at 6-7.  Plaintiff also argues that the FDA
19  has defined "spray types" as "nonstick cooking sprays (e.g., Pam)."
20  Id. at 7 (citing FDA Inspection Guidelines at 6).

21      Plaintiff's arguments are unpersuasive.  First, 21 C.F.R. §
22  101.12(b) does not declare that spray types must be susceptible to
23  measurement by the second.  Rather, the regulation states that the
24  use of particular metrics, such as "seconds [of] spray," are not
25  required.[3]  21 C.F.R. § 101.12(b) n.5.  Second, the composition of

26  ─────────────────
27  [3] Section 101.12(b) contemplates that serving size units are not
    amenable to a one-size-fits-all approach, stating: "Manufacturers
    should use the description of a unit that is most appropriate for
28  the specific product (e.g., sandwich for sandwiches, cookie for
    cookies, and bar for frozen novelties)."  21 C.F.R. 101.12(b) n.5.

**United States District Court**
For the Northern District of California

1   ICBINBS's packaging and its location in the grocery store are not

2   determinative.  Third, Plaintiff's contention that ICBINBS is not a

3   non-stick cooking spray is conclusory and belied by the facts

4   alleged in the complaint.  The front label of the product

5   represents that ICBINBS is "Great For . . . Cooking," and the back

6   label lists a serving size for "Cooking Spray."  Plaintiff's

7   contention is also contradicted by the ICBINBS webpage she attaches

8   to her opposition brief, which states that ICBINBS may be used to

9   "coat[] pans for non-stick cooking and baking."  Opp'n at 8.

10  Fourth, the fact that ICBINBS can be used as a topping does not

11  mean that it is not a cooking spray.  As Defendant points out, the

12  two categories are not mutually exclusive.  Fifth, to the extent

13  that the FDA Inspection Guidelines are binding, they do not provide

14  an exclusive list of "spray type" products.

15      Another problem with Plaintiff's position is that she has yet

16  to allege the appropriate serving size for ICBINBS.  In her

17  opposition brief, she suggests that ICBINBS's serving size should

18  be equivalent to one tablespoon, the Reference Amount for "butter,

19  margarine, oil, and shortening."  However, it is unclear how many

20  sprays of ICBINBS would fill one tablespoon.[4]  This issue goes

21  directly to the plausibility of Plaintiff's serving size claim.

22  _____

23  Since ICBINBS is dispensed via manual pump, expressing the
    product's serving size as a number of sprays is not inconsistent

24  with the regulation.  Indeed, it is unclear how else Defendant
    would express the product's serving size in a manner that a

25  reasonable consumer could measure.

26  [4] The Court cannot derive this figure from ICBINBS's label, since
    it expresses quantities as a function of weight, while a tablespoon

27  is measure of volume.  In its reply brief, Defendant argues that it
    would take forty sprays of ICBINBS to fill one tablespoon.  Reply

28  at 3-4.  It is not clear how Defendant arrived at this number or
    why the Court should take judicial notice of it.

1  For example, if one spray fills one tablespoon, then ICBINBS's
2  serving size is lawful, regardless of whether the product is a
3  "spray type" or a "butter, margarine, oil, [or] shortening."
4  Alternatively, if the Court was to assume that it takes forty
5  sprays to fill a tablespoon, then Plaintiff's claim rests on the
6  implausible assumption that consumers customarily pump a container
7  of ICBINBS forty times per serving.

8      For these reasons, the Court finds that Plaintiff's serving
9  size claim is preempted by 21 C.F.R. § 101.12(b).  The claim is
10 DISMISSED WITH LEAVE TO AMEND.  Should Plaintiff choose to amend,
11 she should allege specific facts showing why ICBINBS is not a
12 spray.  The amended complaint should also identify the appropriate
13 serving size for ICBINBS, as well as the fat and caloric content
14 associated with that serving size.

15              **2.  <u>Plaintiff's "Nutrient Content" Claim</u>**

16     Plaintiff also alleges that Defendant "made unlawful '0 Fat'
17 and '0 Calories' nutrient content claims" on the nutrition panel
18 and the front label.  Compl. ¶¶ 27-32.  Plaintiff's claim that
19 Defendant misrepresented ICBINBS's fat and calorie content on the
20 nutrition panel is largely dependent on her contention that
21 Defendant used unlawful serving sizes.  Plaintiff does not dispute
22 that food manufacturers are entitled to round down to zero where a
23 product's fat per serving is less than 0.5 grams and calories per
24 serving is less than 5.  <u>See</u> 21 C.F.R. § 101.9(c)(1)-(2).  Nor does
25 Plaintiff dispute that ICBINBS has less than 0.5 grams of fat and
26 five calories at the listed serving sizes.  Accordingly, if
27 Defendant used the appropriate serving sizes, it was clearly
28 entitled to round down to zero ICBINBS's fat and calories per

**United States District Court**
For the Northern District of California

1  serving on the nutrition panel.  See id.  Further, if Defendant was

2  entitled to use these rounded figures on the nutrition panel, it

3  was also entitled to use them on the front label.  See Chacanaca v.

4  Quaker Oats Co., 752 F. Supp. 2d 1111, 1120-21 (N.D. Cal. 2010).

5  Because Plaintiff's serving size claims are preempted, see Section

6  IV.A.1 supra, Plaintiff's nutrient content claims are also

7  preempted.  These claims are DISMISSED WITH LEAVE TO AMEND.[5]

8              **3.   Plaintiff's "Asterisk" Claim**

9       This leaves Plaintiff's allegation that, because the front

10  label represents that ICBINBS has "0 Fat," Defendant was required

11  (but failed) to include an asterisk on the nutrition panel next to

12  the ingredients "soybean oil" and "buttermilk," as well as language

13  below the ingredients list indicating that these particular

14  ingredients contain fat.  Compl. ¶¶ 29-31.  In fact, the term "0

15  Fat" appears nowhere on the front label.  Plaintiff appears to be

16  referring to the front label's statement: "*Contains 0 g fat (0 g

17  saturated fat), and 0 g trans fat per serving, see nutrition

18  information for serving size."  This statement appears in small

19  type below a statement in large type: "0 g Trans Fat* Per Serving,"

20  with the asterisk next to "Trans Fat" directing the reader to the

21  statement in smaller type.  See id.

22       Whether or not this claim is preempted turns on 21 C.F.R. §

23  101.62(b), which governs "fat content claims."  Section 101.62(b)

24  provides that the terms "no fat" or "zero fat" may be used "on the

25  _____

26  [5] Defendant also argues that Plaintiff's serving size and nutrient
    content claims are barred by the primary jurisdiction doctrine

27  since they raise technical questions about the categorization of
    food types which are best left to the FDA.  Mot. at 10-12.  The

28  Court need not reach the issue since these claims are preempted as
    pled.

label or in labeling of foods," provided that:

> (i) The food contains less than 0.5 gram (g) of fat per reference amount customarily consumed and per labeled serving or, in the case of a meal product or main dish product, less than 0.5 g of fat per labeled serving; and

> (ii) The food contains no added ingredient that is a fat or is generally understood by consumers to contain fat unless the listing of the ingredient in the ingredient statement is followed by an asterisk that refers to the statement below the list of ingredients, which states "adds a trivial amount of fat," "adds a negligible amount of fat," or "adds a dietarily insignificant amount of fat;" . . . .

21 C.F.R. § 101.62(b)(1)(i)-(ii). In other words, a product that contains less than 0.5 grams of fat per serving may be labeled as "zero fat" so long as (1) the product contains no ingredient that is a fat or contains fat, or (2) the nutrition panel denotes the ingredients that are fat or contain fat with an asterisk and an explanatory statement. Plaintiff essentially alleges that because the ICBINBS packaging makes a "zero fat" nutrient content claim, the nutrition label must include an asterisk next to "soybean oil" and "buttermilk" and a notation indicating that these ingredients contain some amount of fat.

Defendant argues that no asterisks or explanatory statements are required on the nutrition panel because the statement in small type on the front label -- *"Contains 0 g fat . . ." -- is not an independent nutrient content claim subject to § 101.62(b)(1). Mot. at 7-9. Defendant reasons that the "Contains 0 g fat" statement functions solely as a voluntary disclosure that explains the basis for the "0 g trans fat" claim. This argument is inconsistent with the FDCA and its implementing regulations. The regulations define

**United States District Court**
For the Northern District of California

a nutrient content claim as "any direct statement about the level (or range) of a nutrient in the food, e.g., 'low sodium' or 'contains 100 calories.'"  21 C.F.R. § 101.13(b)(1).  Under 21 U.S.C. § 343(r)(1) and 21 C.F.R. § 101.13(c), information that appears as part of the nutrition panel is not a nutrient content claim.  However, "[i]f such information is declared elsewhere on the label or in labeling, it is a nutrient content claim and is subject to the requirements for nutrient content claims."  21 C.F.R. § 101.13(c).  Neither the statute nor the regulations carve out an exception for voluntary disclosures or explanatory statements, even if they appear in small type.  Since the "0 g fat" representation is on the front label, not the nutrition panel, and makes a direct statement about the level of fat in ICBINBS, it must be considered a nutrient content claim.

Defendant also argues that since FDA regulations allow the "0 g trans fat" statement, Plaintiff cannot argue that an explanatory statement clarifying the lawful term is preempted.  Mot. at 7-8.  Defendant relies on Hairston v. South Beach Beverage Co., No. CV 12 -1429-JFW (DTBx), 2012 WL 1893818 (C.D. Cal. May 18, 2012), a case involving flavored beverages labeled as "all natural."  The plaintiff alleged that the "all natural" label was false and misleading because the beverages contained ingredients that were synthetic or created via chemical processes.  Hairston, 2012 WL 1893818, at *1.  The plaintiff also alleged that the use of common vitamin names (e.g., $B_{12}$) was misleading because the vitamins added to the beverage were synthetic.  Id.  The court concluded that the plaintiff's claims regarding the use of the common names of vitamins were preempted (in fact, the plaintiff essentially

1   conceded the point in its briefing).  Id. at *3.  The Court also

2   concluded that the plaintiff could not avoid preemption of his

3   vitamin label claims by arguing that these claims related solely to

4   the defendants' "all natural" representations.  Id.  Based on

5   Hairston, Defendant argues that "Plaintiff cannot avoid preemption

6   by arguing her claim is based solely on the asterisked

7   clarification with no mention of the trans fat claim it describes."

8   Mot. at 8.  Defendant is struggling to fit a square peg into a

9   round hole.  The cited language from Hairston stands for the

10  limited and unremarkable proposition that a plaintiff cannot avoid

11  preemption of one claim by asserting that it supports another

12  claim.  There is no indication that Plaintiff is trying to do so

13  here.  The pertinent inquiry is whether Plaintiff's asterisk claim,

14  standing on its own, is preempted.  The Court concludes that it is

15  not.

16      Finally, Defendant argues that § 101.62(b) only requires an

17  asterisk and explanatory notation where a label claims the entire

18  product is fat free.  Mot. at 8.  Defendant points out that the

19  label at issue here does not represent that ICBINBS is "fat free"

20  or "zero fat," it merely represents that ICBINBS has "0 trans fat

21  per serving" and "0 fat per serving."  Id.  Defendant contends that

22  § 101.62(b) is inapplicable because the label uses the term "per

23  serving."  Id.  Defendant's cramped reading of the regulation is

24  unavailing.  The regulation nowhere states that it only applies

25  where a label claims that there is zero fat in the entire product.

26  Nor is the Court aware of any authority that has interpreted §

27  101.62(b) in this way.  Moreover, § 101.62(b)(1)(i) expressly

28  states that a food qualifies as "fat free" where it contains less

**United States District Court**
For the Northern District of California

1  than 0.5 grams of fat "per reference amount customarily consumed

2  and per labeled serving," suggesting that the regulation's

3  requirements extend to nutrient content claims that are expressed

4  per serving.  Since an entire product need not have less than 0.5

5  grams of fat to qualify as "fat free" under § 101.62(b), it is

6  unclear why the regulation's disclosure requirement would only

7  apply where a manufacturer claimed the entire product was "fat

8  free."  Further, the clear intent of the regulation is to provide

9  consumers with a warning that a product contains some amount of

10  fat, even though it is labeled as "fat free."  Defendant's

11  interpretation would essentially eviscerate that requirement.

12      For these reasons, the Court finds that Plaintiff's asterisk

13  claim is not preempted.[6]

14          **4.   Private Right of Action to Enforce FDA Regulations**

15      Defendant argues that Plaintiff's claims should also be

16  dismissed because they are based on alleged violations of the FDCA

17  and because there is no private right of action under the statute.

18  However, as Defendant's own authority shows, there is a distinction

19  between (1) state law claims that merely recite FDCA violations,

20  and (2) state law claims alleging that non-compliance with the FDCA

21  regulations deceived and harmed consumers, i.e., claims that would

22  exist in the absence of the FDCA.  See Loreto v. Procter & Gamble

23

24  [6] Defendant argues that Plaintiff's UCL and CLRA claims are barred
    by the "safe harbor" doctrine, which provides that a defendant is
25  not liable for conduct that is permitted by another law.  Mot. at
    12 (citing Knevelbaard Dairies v. Kraft Foods, Inc., 232 F.3d 979,
26  994 (9th Cir. 2000)).  The Court finds that Plaintiff's UCL and
    CLRA claims are not barred by the safe harbor doctrine to the
27  extent that they are predicated on Defendant's failure to include
    an asterisk in the ingredients list and a notation that certain
28  ingredients add some amount of fat, since such labeling practices
    are not expressly permitted by FDA regulations.

United States District Court
For the Northern District of California

1  Co., No. 10-4274, 2013 WL 645952, at *2-3 (6th Cir. Feb. 22, 2013).

2  Plaintiff's claims fall into the latter category and are therefore

3  not preempted under this particular theory.  Plaintiff essentially

4  alleges that Defendant's labeling not only violates the FDCA but

5  also misleads reasonable consumers into thinking that ICBINBS has

6  absolutely no fat or calories.  Absent an FDCA violation, these

7  allegations could potentially support a claim for violation of the

8  CLRA or UCL.  Accordingly, the Court finds that Plaintiff's claims

9  are not preempted merely because the FDCA does not provide a

10 private right of action.

11         **B.    Pleading Defects**

12         Defendant argues that, even if Plaintiff's claims are not

13 preempted, they must be dismissed because of various claim-specific

14 pleading defects.  Specifically, Defendant contends that: (1)

15 Plaintiff has failed to plead her fraud-based claims with the

16 requisite particularity, (2) unjust enrichment is not a cause of

17 action, (3) Plaintiff cannot state a claim for breach of express

18 warranty, and (4) Plaintiff cannot assert violations of other

19 states' consumer protection statutes.  Since the Court has found

20 that Plaintiff's serving size and nutrient content claims are

21 preempted, see Section IV.A supra, only Plaintiff's asterisk claim

22 can support Plaintiff's causes of action.

23         **1.    Fraud**

24         Defendant argues that Plaintiff has failed to plead her fraud

25 claims with sufficient particularity.  Defendant does not specify,

26 but the Court presumes that it is targeting Plaintiff's claims for

27 fraud by concealment and intentional misrepresentation, as well as

28 her claims for violations of the UCL and CLRA.  See Kearns, 567

**United States District Court**
For the Northern District of California

1   F.3d at 1125 (UCL and CLRA claims grounded in fraud must satisfy

2   the particularity requirements of Rule 9(b)).  Among other things,

3   Defendant argues that Plaintiff has failed to plead which

4   statements she saw and relied upon and that she never explains how

5   the absence of an asterisk next to the oil ingredients misled her.[7]

6   Mot. at 13-14.  Defendant reasons that the asterisk and explanatory

7   note Plaintiff demands would downplay the fat content since the

8   note would state that any fat content is "trivial" or

9   "insignificant."  <u>Id.</u> at 14 (citing 21 C.F.R. § 101.62).

10       Plaintiff responds that the Complaint meets the particularity

11  requirements of Rule 9(b) by pleading the falsity of the

12  representations, by listing the ways in which ICBINBS's label

13  violated FDA regulations, and by explaining that Plaintiff sought a

14  fat- and calorie-free alternative to butter and that she would not

15  have purchased ICBINBS but for the false "0 Fat" and "0 Calorie"

16  representations.  Opp'n at 14.  As to the asterisk claim in

17  particular, Plaintiff argues that "[t]he fact that [Defendant]

18  believes the asterisk would confuse consumers is immaterial: The

19  FDA requires it, plain and simple."  <u>Id.</u> at 15.

20       As discussed in Section IV.A.4 <u>supra</u>, Plaintiff cannot state a

21  claim merely by pleading a violation of the FDCA and its

22  implementing regulations.  The FDCA does not provide for a private

23  right of action and, in any event, a violation of the FDCA does not

24  _____

25  [7] Defendant also argues that Plaintiff fails to allege facts
    establishing Defendant's knowledge of falsity or intent to defraud.
    Mot. at 14.  However, under Rule 9(b), "[m]alice intent, knowledge,

26  and other conditions of a person's mind may be alleged generally."
    None of the authority cited by Defendant holds otherwise.  <u>See</u>

27  <u>Herskowitz v. Apple Inc.</u>, 12-CV-02131-LHK, 2013 WL 1615867, at *13
    (N.D. Cal. Apr. 15, 2013); <u>PAI Corp. v. Integrated Sci. Solutions,</u>

28  <u>Inc.</u>, No. C-06-00767 EDL, 2006 U.S. Dist. LEXIS 34828, at *20 (N.D.
    Cal. May 22, 2006).

amount to fraud.  The Court does not mean to imply that there is no way that Plaintiff could have been deceived by the alleged FDCA violation, i.e., the lack of an asterisk and explanatory note on the nutrition panel.  It is not inconceivable that a customer would examine the nutrition panel of a product and would decline to purchase that product if it contained even a "trivial" or "insignificant" amount of fat per serving.  Indeed, Plaintiff expressly alleges that she was looking for a "0 Fat" option.  However, as Defendant points out, Plaintiff has not pled that she ever looked at the nutrition panel.  As such, it is implausible that she was deceived by its lack of disclosures.[8]

Since Plaintiff has failed to plead reliance, the Court DISMISSES her claims for fraud by concealment, intentional misrepresentation, violation of the UCL, and violation of the CLRA as they relate to her asterisk claim.  The Court grants Plaintiff leave to amend so that she may allege what she saw and when she saw it.

### 2.   Unjust Enrichment

Defendant argues that unjust enrichment is a theory of recovery, not a cause of action under California law.  Mot. at 15.  Courts in this district are split on the issue.  A number of courts have found that a plaintiff cannot assert a claim for unjust enrichment that is merely duplicative of statutory or tort claims.

---

[8] In Williams v. Gerber Products Co., 552 F.3d 934, 939 (9th Cir. 2008), the Ninth Circuit held that "reasonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box."  Plaintiff's asterisk claim is distinct from the claim at issue in Williams since the governing FDA regulation here, 21 C.F.R. § 101.62(b), expressly allows food manufacturers to clarify representations on the front label through the use of fine print disclosures on the nutrition panel.

**United States District Court**
For the Northern District of California

1  See <u>Brazil v. Dole Food Co., Inc.</u>, 12-CV-01831-LHK, 2013 WL

2  1209955, at *18 (N.D. Cal. Mar. 25, 2013); <u>Lanovaz v. Twinings N.</u>

3  <u>Am., Inc.</u>, C-12-02646-RMW, 2013 WL 675929, at *7 (N.D. Cal. Feb.

4  25, 2013); <u>Smith v. Ebay Corp.</u>, No. C 10-03825 JSW, 2012 U.S. Dist.

5  LEXIS 1211, at *27-29 (N.D. Cal. Jan. 5, 2012).  Other courts have

6  declined to dismiss unjust enrichment claims based on "quasi-

7  contract." <u>Jones v. ConAgra Foods, Inc.</u>, No. C 12-01633 CRB, 2012

8  WL 6569393, at *13 (N.D. Cal. Dec. 17, 2012); <u>Larsen v. Trader</u>

9  <u>Joe's Co.</u>, C 11-05188 SI, 2012 WL 5458396, at *7 (N.D. Cal. June

10 14, 2012); <u>Astiana v. Ben & Jerry's Homemade, Inc.</u>, C 10-4387 PJH,

11 2011 WL 2111796, at *11 (N.D. Cal. May 26, 2011).  The Court finds

12 the former line of cases more persuasive here, especially since all

13 of Plaintiff's other claims fail as pled.  Without any actionable

14 misconduct, Plaintiff cannot recover.  Plaintiff may seek

15 restitution if she can state a claim under the UCL or CLRA.

16 However, she may not assert a standalone claim for unjust

17 enrichment.  Accordingly, the claim is DISMISSED WITH PREJUDICE.

18               **3.    Breach of Express Warranty**

19      Plaintiff's claim for breach of express warranty is predicated

20 on the allegation that Defendant expressly warranted that ICBINBS

21 is "0 Fat" and "0 Calories."  Compl. ¶ 73.  As discussed in

22 Sections IV.A.1 and IV.A.2 <u>supra</u>, Plaintiff's serving size and

23 nutrient content claims are preempted by the FDCA and its

24 implementing regulations.  As such, these claims cannot support a

25 cause of action for breach of express warranty.  Plaintiff's

26 asterisk claim is not preempted.  However, since it is not

27 predicated on any kind of affirmative representation, it cannot

28 support a claim for breach of express warranty either.

**United States District Court**
For the Northern District of California

1   Accordingly, Plaintiff's claim for breach of express warranty is

2   DISMISSED WITH LEAVE TO AMEND.

3          **4.   Other States' Consumer Protection Statutes**

4          Finally, Defendant argues that Plaintiff cannot assert

5   violations of the consumer protection laws of all fifty states

6   since these laws raise numerous individual legal issues that would

7   render class certification improper.  Mot. at 19.  Plaintiff

8   responds that a motion to dismiss is not the proper vehicle to

9   address issues of class certification.  Opp'n at 19.

10         Class allegations typically are tested on a motion for class

11  certification, not at the pleading stage.  See Collins v. Gamestop

12  Corp., C10-1210-TEH, 2010 WL 3077671, at *2 (N.D. Cal. Aug. 6,

13  2010).  However, "[s]ometimes the issues are plain enough from the

14  pleadings to determine whether the interests of the absent parties

15  are fairly encompassed within the named plaintiff's claim." Gen.

16  Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 160 (1982).  Thus, some

17  courts have struck class allegations where it is clear from the

18  pleadings that class claims cannot be maintained.  E.g., Sanders v.

19  Apple Inc., 672 F. Supp. 2d 978, 990-91 (N.D. Cal. 2009).

20         The Ninth Circuit has held that "[e]ach class member's

21  consumer protection claim should be governed by the consumer

22  protection laws of the jurisdiction in which the transaction took

23  place." Mazza v. Am. Honda Motor Co., Inc., 666 F.3d 581, 594 (9th

24  Cir. 2012).  Thus, "[w]here . . . a representative plaintiff is

25  lacking for a particular state, all claims based on that state's

26  laws are subject to dismissal." Granfield v. NVIDIA Corp., C 11-

27  05403 JW, 2012 WL 2847575, at *4 (N.D. Cal. July 11, 2012)

28  (quotations omitted).  Here, there is only one named plaintiff and

she has not alleged that she purchased ICBINBS outside of California.  Thus, Plaintiff does not have standing to assert a claim under the consumer protection laws of the other states named in the Complaint.  This is a pleading defect amenable to determination prior to a motion for class certification.

For these reasons, Plaintiff's claim for violation of the consumer protection acts of the various states is DISMISSED with leave to amend.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

United States District Court
For the Northern District of California

V.    **CONCLUSION**

For the foregoing reasons, Defendant Unilever United States, Inc.'s motion to dismiss is GRANTED.  The Court finds that Plaintiff Kym Pardini's claims are preempted to the extent that they are based on the allegation that Defendant uses illegal serving sizes and makes false nutrient content claims.  The Court grants Plaintiff leave to amend to show that these allegations are not preempted.  Plaintiff's claims are not preempted to the extent that they are predicated on Defendant's failure to provide a notation on the nutrition panel that certain ingredients contain fat.  Plaintiff's claims for intentional misrepresentation, fraud by concealment, violation of the UCL, violation of the CLRA, breach of express warranty, and violation of other states' consumer protection statutes are DISMISSED WITH LEAVE TO AMEND.  Plaintiff's claim for unjust enrichment is DISMISSED WITH PREJUDICE.  Plaintiff shall amend her complaint within 30 days of the signature date of this Order.  Failure to do so may result in dismissal with prejudice.

IT IS SO ORDERED.

Dated: July 9, 2013

_____

UNITED STATES DISTRICT JUDGE