Steve W. Berman (*Pro Hac Vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
Telephone:  (206) 623-7292
Facsimile:  (206) 623-0594
steve@hbsslaw.com

Lee M. Gordon (SBN 174168)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 203
Pasadena, CA  91101
Telephone:  (213) 330-7150
Facsimile:  (213) 330-7152
E-mail: lee@hbsslaw.com

Ureka E. Idstrom (*Pro Hac Vice*)
THE EUREKA LAW FIRM
5606 Belinder Road
Fairway, KS  66205
Telephone:  (816) 665-3515
uidstrom@eurekalawfirm.com

[Additional Counsel Listed on Signature Page]

*Attorneys for Plaintiffs and the Proposed Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| KYM PARDINI and CARRIE WOOD, on behalf of themselves and all others similarly situated,<br><br>                             Plaintiffs,<br><br>        v.<br><br>UNILEVER UNITED STATES, INC., a Delaware corporation,<br><br>                             Defendant. | No. 3:13-cv-01675-SC<br><br>__CLASS ACTION__<br><br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**<br><br><br>__DEMAND FOR JURY TRIAL__ |

# TABLE OF CONTENTS

I.  OVERVIEW ...................................................................................................1

II.  JURISDICTION ............................................................................................2

III.  PARTIES ......................................................................................................2

IV.  FACTUAL ALLEGATIONS .........................................................................3

   A.  Defendant Markets ICBINB as a Butter-Substitute ...................................3

   B.  I Can't Believe It's Not Butter! Spray .......................................................4

   C.  Unilever Fails to Disclose the Amount of Fat and Calories in ICBINB as Required By the Food Drug and Cosmetic Act ...........................................6

      1.  Defendant Failed to Adequately Disclose the Amount of Fat and Calories in ICBINB by Using Unlawful Serving Sizes ...................................................7

         a.  Serving Size 1 Gram for "Topping" ................................................7

         b.  Serving Size 0.25 Grams for "Cooking Spray" ...............................8

      2.  Defendant Failed to Indicate that ICBINB Actually Contains Fat With an Asterisk as Required by the Food Drug and Cosmetic Act...........................11

   D.  Defendant Was Aware that ICBINB Was Mislabeled Based on Consumer Complaints and FDA Warning Letters.........................................................11

   E.  Plaintiffs Relied on ICBINB's Label in Deciding to Purchase ICBINB.................12

   F.  Plaintiffs Could not Have Discovered, in the Exercise of Reasonable Diligence that Defendant's Product Labels Were Misleading.........................13

   G.  Defendant's Misrepresentations Cause Plaintiffs and the Class Ascertainable Damages and Injury.............................................................14

V.  CLASS ACTION ALLEGATIONS ................................................................15

VI.  CAUSES OF ACTION....................................................................................17

   FIRST CAUSE OF ACTION  FRAUD BY CONCEALMENT...........................17

   SECOND CAUSE OF ACTION  BREACH OF EXPRESS WARRANTY .......18

   THIRD CAUSE OF ACTION  INTENTIONAL MISREPRESENTATION.......18

   FOURTH CAUSE OF ACTION ........................................................................19

   VIOLATIONS OF NEW JERSEY'S CONSUMER FRAUD ACT ....................19

   FIFTH CAUSE OF ACTION  VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT  (Cal. Civ. Code § 1750, *et seq.*)............................................20

SIXTH CAUSE OF ACTION  VIOLATION OF THE CALIFORNIA UNFAIR
COMPETITION LAW  (CAL. BUS. & PROF. CODE § 17200, *et seq.*)....................................22

VII.    PRAYER FOR RELIEF ......................................................................................................24

VIII.   JURY TRIAL DEMAND....................................................................................................25

1    Plaintiffs Kym Pardini and Carrie Wood bring this action on behalf of themselves and all

2    others similarly situated against Unilever United States, Inc. ("Unilever").  Plaintiffs' allegations

3    against Defendant are based upon information and belief and upon investigation of Plaintiffs'

4    counsel, except for allegations specifically pertaining to Plaintiffs, which are based upon Plaintiffs'

5    personal knowledge.

## I.    OVERVIEW

6    

7    1.    This is a putative class action on behalf of a class of persons seeking redress for

8    Defendant's deceptive practices in its labeling and marketing of I Can't Believe It's Not Butter!

9    Spray ("ICBINB").

10    2.    Consumers are increasingly health conscious and, as a result, many consumers are

11    interested in fat-free and calorie-free food alternatives for themselves and their families.

12    3.    Defendant's ICBINB is deceptively labeled, marketed and sold to Plaintiffs and

13    other consumers as having "0g fat" and "0 calories."

14    4.    In reality, Defendant's ICBINB is neither "0 fat" nor "0 calories."  ICBINB contains

15    1160 calories and 124 grams of fat per 12-ounce bottle.

16    5.    Defendant's claims regarding ICBINB are false and misleading because its product

17    is falsely and unlawfully labeled "0g fat" and "0 calories."

18    6.    Defendant's claims regarding ICBINB are false and misleading because its product

19    labels include artificially small "serving sizes" that fail to account for the manner in which these

20    products are customarily consumed.

21    7.    Defendant's claims regarding ICBINB are false and misleading because its labels do

22    not disclose that ICBINB contains ingredients that are fats which, even in small quantities, add

23    certain amounts of fat per serving.

24    8.    As a result of its deceptive marketing and advertising, Defendant has generated

25    substantial revenues from the sale of ICBINB.

26

27

28

## II.     JURISDICTION

9.     This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) and (d) because the amount in controversy for the Class exceeds $5,000,000, and Plaintiffs and other putative Class members are citizens of a different state than Defendant.

10.     This Court has personal jurisdiction over Plaintiffs Kym Pardini and Carrie Wood because they submit to the Court's jurisdiction.  This Court has personal jurisdiction over the Defendant because it conducts substantial business in the District and thus has sufficient minimum contacts with this District and California.

11.     Venue is proper in this Court because a substantial part of the events, omissions and acts giving rise to the claims herein occurred in this District.  Defendant distributed, advertised and sold ICBINB, which is the subject of the present complaint, in this District.

12.     Intradistrict Assignment:  Venue is proper in the San Francisco or Oakland Divisions of this District because one of the plaintiffs resides in this District and Defendant conducts substantial business in this District.

### III.     PARTIES

13.     Plaintiff Kym Pardini is, and was at all relevant times, a citizen of California. Plaintiff purchased and consumed ICBINB in grocery stores in and around her home in Novato, California during the Class Period for personal, family, and household purposes.  Plaintiff saw and read Unilever's misrepresentations that ICBINB contains "0 g fat" and "0 calories" and relied on such misrepresentations in deciding to purchase ICBINB.  Plaintiff Kym Pardini would not have purchased ICBINB had Unilever disclosed the true nature of its product on its packaging and/or would not have paid a premium for ICBINB.

14.     Plaintiff Carrie Wood is, and was at all relevant times, a citizen of Missouri. Plaintiff purchased and consumed ICBINB in grocery stores in and around her home in Jackson County, Missouri during the Class Period for personal, family, and household purposes.  Plaintiff saw and read Unilever's misrepresentations that ICBINB contains "0 g fat" and "0 calories" and relied on such misrepresentations in deciding to purchase ICBINB.  Plaintiff Carrie Wood would

1    not have purchased ICBINB had Unilever disclosed the true nature of its product on its packaging

2    and/or would not have paid a premium for ICBINB.

3        15.    Defendant Unilever is a for-profit, Delaware corporation with its principal place of

4    business in Englewood Cliffs, New Jersey. Defendant manufactures and markets brand name food

5    products throughout the nation, including California.

6                    **IV.    FACTUAL ALLEGATIONS**

7        16.    Defendant is the third largest consumer goods company in the world.  It markets and

8    sells a line of margarine and vegetable oil spreads under the trademark name I Can't Believe It's

9    Not Butter!

10       17.    Today, I Can't Believe It's Not Butter! is the second largest margarine/spreads

11   brand in the U.S. with annual retail sales in excess of $300 million dollars.[1]

12   **A.    Defendant Markets ICBINB as a Butter-Substitute**

13       18.    Unilever knows that society is concerned about obesity[2] and as a result consumers

14   are looking for reduced fat and reduced calorie food choices.

15       19.    To capitalize on these preferences, Unilever markets I Can't Believe It's Not Butter!

16   as a healthier alternative to butter.  While it has engaged various celebrities to market its product

17   including "Fabio" and " Kim Catrall," Unilever consistently represents, "You can feel good about

18   using I Can't Believe It's Not Butter! everyday." [3]

19       20.    In marketing ICBINB as a butter-substitute, Unilever draws nutritional comparisons

20   to butter.   For instance, Unilever promotes, "Attention butter lovers: Do you crave the creamy

21   flavor of butter with your favorite foods, but worry you have to compromise? I Can't Believe It's

22   Not Butter!® Original  tastes just as delicious as fresh butter"[4] and "Looking for more convenient

---

[1]    *I can't believe it's not Butter!*, http://www.unileverusa.com/brands-in-action/detail/I-Can-t-Believe-It-s-Not-Butter--/295856/?WT.contenttype=view%20brands (last visited August 7, 2013).

[2]    http://www.unileverusa.com/brands/nutrition/diethealthandthefightagainst obesity/ (last accessed July 27, 2012).

[3]    http://www.unileverusa.com/brands/foodbrands/icantbelieveitsnotbutter/ (last accessed July 27, 2012).

[4]    *I can't believe it's not Butter*, *supra* note 1.

1    ways to cook, and to manage calorie intake?  Then look no further with I Can't Believe It's Not

2    Butter! Spray."[5]

3          21.    In marketing ICBINB as a butter-substitute, Unilever touts ICBINB's unmistakable

4    butter flavor. For instance, the bottle itself proclaims "America's Favorite Buttery Spray" and the

5    name itself suggests that I Can't Believe It's Not Butter imparts comparable buttery taste.

6          22.    In marketing ICBINB as a butter-substitute, Defendant emphasizes that ICBINB can

7    replace butter in any application. For instance, the front label depicts ICBINB in a role traditionally

8    reserved for butter – as a topping for corn on the cob and the label represents that (like butter)

9    ICBINB can be used for "cooking" and "topping."  *See* Figures 1 and 2.  Unilever even offers

10   various tips and recipes for using ICBINB in place of butter on easy grilled vegetables, as topping

11   for popcorn and as a spread for muffins and toasted bread.

12   **B.    I Can't Believe It's Not Butter! Spray**

13         23.    In 1994, Unilever launched I Can't Believe It's Not Butter! Spray, a butter-flavored,

14   vegetable oil spread that is dispensed in pump-action squirt bottles.



27      [5]    WayBack Machine,
     http://web.archive.org/web/20051119205444/http://www.tasteyoulove.com/products.asp?section=products/spray (last visited August 7, 2013).

24.    Like other ICBINB products, ICBINB "Spray" is promoted as a substitute for butter and is used by consumers interchangeably with butter.

25.    Unlike other ICBINB products, however, ICBINB "Spray" purports to be free of fat and calories.  On the nutrition panel, ICBINB declares "Calories 0" and "Total Fat 0g" per serving. *See* Figure 2.  Similarly, the front label states "0 Calories per serving" and "0g fat, (0g saturated fat), 0g Trans Fat per serving."  *See* Figure 1.



**Nutrition Facts**

Serving Size 1 Spray (0.20g) Cooking Spray
5 Sprays (1g) Topping
Servings Per Container 1700 Cooking Spray, 340 Topping

Calories 0    Calories from Fat 0

| Amount/Serving | Cooking Spray | Topping | Amount/Serving | Cooking Spray | Topping |
|---|---|---|---|---|---|
| | % DV* | % DV* | | % DV* | % DV* |
| Total Fat 0g | 0% | 0% | Cholesterol 0mg | 0% | 0% |
| Sat Fat 0g | 0% | 0% | Sodium 0mg | 0% | 15mg/1% |
| Trans Fat 0g | | | Total Carb 0g | 0% | 0% |
| | | | Protein 0g | | |

Not a significant source of dietary fiber, sugars, vitamin A, vitamin C, calcium and iron.
*Percent Daily Values (DV) are based on a 2,000 calorie diet.

INGREDIENTS: WATER, LIQUID SOYBEAN OIL, SALT, SWEET CREAM BUTTERMILK*, XANTHAN GUM, NATURAL SOY LECITHIN, POLYSORBATE 60, LACTIC ACID, (POTASSIUM SORBATE, CALCIUM DISODIUM EDTA) USED TO PROTECT QUALITY, NATURAL AND ARTIFICIAL FLAVORS, VITAMIN A (PALMITATE), BETA CAROTENE (COLOR).
*ADDS A DIETARILY INSIGNIFICANT AMOUNT OF CHOLESTEROL

**GLUTEN-FREE.**
MANUFACTURED & UNCONDITIONALLY GUARANTEED BY
© UNILEVER, ENGLEWOOD CLIFFS, NJ 07632
**REFRIGERATE FOR QUALITY.**
BEST WHEN USED BY DATE PRINTED ON CONTAINER.
QUESTIONS? CALL 1-800-634-0302.
For recipes, go to: NowYouKnowBetter.com

Unilever

Figure 2

26.    In reality, ICBINB contains 124 g fat and 1160 calories per 12-ounce bottle. Each "spray" delivers .8 calories and .08 grams of fat.

27.     As described herein, Unilever's 0-fat and 0-calories representations are false and misleading because:

    a.     ICBINB is not "0 fat" as a matter of fact or law;

    b.     ICBINB is not "0 calories" as a matter of fact or law;

    c.     ICBINB uses unlawfully small serving sizes that do not reflect customary usage; and

    d.     ICBINB does not disclose that certain ingredients supply "trace amounts of fats" as required by law.

**C.     Unilever Fails to Disclose the Amount of Fat and Calories in ICBINB as Required By the Food Drug and Cosmetic Act**

28.     The Food Drug and Cosmetic Act ("FDCA") regulates the proper labeling of food. 21 U.S.C. §§ 301 *et seq.*

29.     It also vests the Food and Drug Administration ("FDA") with the authority to "protect the public health by ensuring that foods are safe, wholesome, sanitary, and properly labeled." 21 U.S.C. § 393(b)(2)(A).

30.     Pursuant to this authority, the FDA has promulgated a comprehensive set of regulations pertaining to labeling requirements. 21 C.F.R. §101.1 *et seq.* These regulations require a manufacturer to disclose the total number of calories and fat per serving on the labeling of a food product. 21 C.F.R. §101.9(c).

31.     Defendant misled consumers by failing to comply with this regulatory scheme. Specifically, during the Class Period, Defendant violated FDA regulations by:

    a.     Declaring "Calories 0" in the nutrition panel in violation of 21 C.F.R. 101.9(c)(1);

    b.     Declaring "Total Fat 0g" per serving in the nutrition panel in violation of 21 C.F.R. 101.9(c)(2);

    c.     Declaring "0 Calories" on the front label in violation of 21 C.F.R. 101.60;

    d.     Declaring "0g fat" on the front label in violation of 21 C.F.R. 101.62; and

    e.     Omitting the asterisk required when making "0g fat" claims on the front label in violation of 21 C.F.R. 101.62(b)(ii).

1        **1.        Defendant Failed to Adequately Disclose the Amount of Fat and Calories in**

2                   **ICBINB by Using Unlawful Serving Sizes**

3        32.    21 U.S.C. §343(q) governs the disclosure of nutrition information on a product

4   label.  It deems a food misbranded unless its label or labeling discloses the total number of calories

5   per serving and the amount of fat per serving.  *See also* 21 C.F.R. §101.9(c)(1-2)

6        33.    The regulations define a "serving" as the amount of food "customarily consumed"

7   per eating occasion, which must be "based on consumption data under actual conditions of use."

8   21 C.F.R. §101.9(b)(1).

9        34.    The FDA has prescribed serving sizes for 131 product categories "to assure that

10  nutrition labels on similar types of foods are consistent, so that consumers will be able to easily and

11  readily make comparisons of nutrient content among products."  55 F.R. 29517.

12       35.    A manufacturer must use an authorized serving size or petition the FDA to establish

13  a new product category by submitting evidence of customary usage.  21 C.F.R. §101.12(h).

14       36.    The FDA has designated "Fats and Oils" as one product category.  It comprises

15  various subcategories including the default, "Butter, margarine, oil and shortening."  The required

16  serving size for "Butter, margarine, oil and shortening" is one tablespoon.  Manufacturers must use

17  the defaulted serving size of one tablespoon for any "Fat and Oil" unless the product fits within a

18  more specific subcategory.

19       37.    ICBINB's label lists serving sizes for "topping" and "cooking spray" applications.

20  ICBINB expresses both serving sizes by weight and in terms of the number of "sprays."  One

21  "spray" does not, however, deliver a consistent amount of product and recently, Unilever changed

22  its labels in an attempt to make the "spray" a standardized unit of measurement.

23       38.    Regardless, both serving sizes are unlawful because they do not follow FDA

24  mandated serving sizes.

25       **a.    Serving Size 1 Gram for "Topping"**

26       39.    The FDA requires that a serving size be based upon the product's major intended

27  use. 21 C.F.R. §101.12(a)(7).

28

40.    Consumers primarily use ICBINB as a "topping" – a use that Defendant's own label depicts and encourages. *See* Figure 2 (depicting ICBINB as a topping for corn on the cob).

41.    As a topping, ICBINB lists a serving size of 5 sprays (1 g). *See* Figure 2.

42.    One gram is not, however, a permissible serving size for any product in the "Fats and Oils" product category. *See* 21 C.F.R. §101.12, Table 2.

43.    As the FDA has explained, "Manufacturers cannot deviate from the reference amount. . . . If the uniformity expected by Congress is to be maintained, the information on the need for revised or separate reference amounts must be evaluated by the FDA through the petition process that it has established. . . ." 58 F.R. 2273.

44.    Defendant's one gram serving size is, therefore, unlawful.  It is also misleading because consumers use more than five sprays to achieve a buttery flavor.

**b.    Serving Size 0.25 Grams for "Cooking Spray"**

45.    ICBINB lists a second serving size of one spray (0.2 g) for "Cooking Spray" applications. *See* Figure 2.

46.    In so doing, Unilever wrongfully classifies ICBINB as a "spray type" with a required serving size of 0.25 grams. *See* 21 C.F.R. §101.12.

47.    Defendant's classification is unlawful because consumers like Ms. Pardini and Ms. Wood do not use one spray (0.2 g) and serving sizes must reflect customary usage.

48.    Complaints about Defendant's woefully inadequate serving sizes abound.  For instance, a contributor to the website "That's Fit" writes, "This issue makes me furious – so often products that are full of fat, and even trans fats, designate completely ridiculous serving sizes, then 'round' the fat down to zero.  Often, they won't even have on the label anywhere what the actual fat content is.  So people think there's no fat when there's a ton."[6] Another contributor writes

---

[6]    Crabby McSlacker, Comment to *I Can't Believe It's Not Butter Spray Is Full of Fat – Buyer Beware*, That's Fit (June 1, 2007), http://www.thatsfit.com/2007/06/01/i-cant-believe-its-not-butter-spray-is-full-of-fat-buyer-be/.

1    "Well that's just stupid… ive never used ONE spray." [7]

2        49.    Many consumers like Ms. Pardini and Ms. Wood, in fact, report using far more than

3    one spray.  Some even admit to pouring the product, thus avoiding the spray mechanism altogether.

4    For instance, a contributor to the website myfitnesspal.com writes, "A while back, I thought I had

5    discovered a gold mine! I can't believe it's not butter spray! For a butter substitute! 0 calories,

6    yada, yada. But after a bit, I began unscrewing the cap and pouring it on my potato, my oatmeal,

7    etc. Just now, I googled it to see if it's bad for me (I was so sure it wasn't, ha) and dang it, it is." [8]

8        50.    Unilever's own website acknowledges that consumption exceeds one spray.  For

9    instance, it promotes ten sprays for a single serving of Asparagus 'N Parmesan Omelet. *See*

10    Figure 3.



Figure 3

25    ───────────────

        [7]    Elizabethberg, Comment to *The Truth About "0" Calorie Parkay Butter Spray*, Calorie
26    Count (April 10, 2008), http://caloriecount.about.com/forums/foods/truth-calorie-parkay-butter-spray.

27        [8]    MaryBBrown, Comment to *I Can't Believe It's Not Butter-Spray*, MyFitnessPal (April 14,
    2011), http://www.myfitnesspal.com/topics/show/217304-i-can-t-believe-it-s-not-butter-spray-i-
28    think-it-s-bad-fo.

51.    Defendant's classification is also unlawful because ICBINB is a butter-substitute and by law, interchangeable products must use consistent serving sizes. 21 C.F.R. §101.12(d).

52.    The FDA has explained, "the agency is proposing these standard serving sizes to assure that nutrition labels on similar types of foods are consistent, so that consumers will be able to easily and readily make comparisons of nutrient content among products.  In addition, FDA expects that standard serving sizes will eliminate some of the problems that occur when manufacturers manipulate serving sizes to make a product appear, for example, lower in calories . . . than it would if a more objective serving size were used."   55 F.R. 29517 (July 19, 1990).

53.     "The agency believes that by grouping foods that have similar dietary usage into one category, a reasonable and appropriate serving size for all food within a category can be established . . . a consistent serving size for similar products enables consumers to compare the nutritional value of foods that are used interchangeably in the diet."  56 F.R. 60394, 60397 (Nov. 27, 1991).

54.    As explained, ICBINB is promoted and used by consumers (including Ms. Pardini and Ms. Wood) as a butter substitute.

55.    Its consumption is driven by taste, not the ability to lubricate.

56.    Because consumers use ICBINB to achieve a comparable buttery flavor, it belongs in the same product category as butter itself with a required serving size of one tablespoon.  *See* 21 C.F.R. 101.12, Table 2.

57.    Were it properly labeled with the serving sizes mandated by the FDA for a butter substitute, Unilever could not "round down" to claim "0g fat" per serving or "Calories 0" in the nutrition panel and "0 Calories per serving" and "0g fat" outside of the nutrition panel.[9]  Instead the label would have read 60 calories and 6 grams of fat per tablespoon.[10]

---

[9]    Notably, other products in the ICBINB line which are also used and promoted as butter substitutes using the same serving size as butter itself – one tablespoon.

[10]    Because the "spray" delivers a variable amount of product, the per serving size is best expressed in a common household measurement, rather than the "spray."

**2.      Defendant Failed to Indicate that ICBINB Actually Contains Fat With an Asterisk as Required by the Food Drug and Cosmetic Act**

58.      No matter the serving size, if a product claims to be free of fat it must include an asterisk referring to a statement below the list of ingredients, which states 'adds a trivial amount of fat' 'adds a negligible amount of fat' or 'adds a dietary insignificant amount of fat.'" 21 C.F.R. § 101.62.

59.      While Defendant listed "soybean oil" and "sweet cream buttermilk" in its ingredient list, these terms were not followed by an asterisk and any language disclosing the presence of fat. See Figure 2.

60.      Defendant's failure to disclose trace amounts of fat renders its product false and misleading.

**D.      Defendant Was Aware that ICBINB Was Mislabeled Based on Consumer Complaints and FDA Warning Letters**

61.      Defendant knew or should have known that its product was mislabeled and engendered confusion among consumers.  The Internet is replete with complaints echoing that of the named Plaintiffs.  For example, a contributor to the website "sparkpeople.com" writes, "I agree that most nutritional info can be misleading, but the butter spray takes the cake! Based on their logic, Doritos could advertise their chips as being 0 cal and 0 fat if they dropped the serving size down to half a chip. They should not legally be allowed to advertise a product with such a small serving size. Not to mention it's next to impossible to measure. Nor is it a valid form of measurement. A more realistic approach would be to base the nutrition info on a tsp. of spray."[11]

62.      In March of 2004, the FDA issued a guidance letter to the food industry that indicated the FDA was concerned about the use of improper serving sizes.  The letter stated:

> Dear Food Manufacturer:
>
> As you are aware, the Food and Drug Administration (FDA) is involved in an initiative to give consumers helpful information that

---

[11]   Toozluv, Comment to I *Can't Believe It's Not Butter Spray Full of Fat!*, SparkPeople (July 8, 2013),
http://www.sparkpeople.com/myspark/messageboard.asp?imboard=1&imparent=31440612.

will enable them to make more informed choices about their diets and lifestyle in an effort to reduce the incidence of overweight and obesity in the United States.  A key component in providing nutrient information to consumers is the "Nutrition Facts" panel on food packages.  In order for this nutrition information to be useful to consumers, it must be accurate and based on a meaningful amount of food.  After the Nutrition Labeling and Education Act was enacted, thereby mandating nutrition labeling, FDA promulgated regulations that specify how serving size must be derived from an appropriate reference amount for the food commodity in question. . . . Therefore, we are taking this opportunity to remind the food industry about the rules for determining an appropriate serving size.  Manufacturers must use the information provided in Title 21 of the Code of Federal Regulations (CFR) sections 101.9(b) and 101.12 to determine a specific serving size for their products. . . .[12]

FDA encourages the food industry to review their nutrition information and assure that the serving size declared is appropriate for the commodity in question.  FDA also encourages manufacturers to refer to our guidance documents at www.cfsan.fda.gov for additional information on serving sizes.

63.    Defendant ignored these consumer complaints and the FDA's guidance and continued to use its deceptive and misleading product labels.

**E.    Plaintiffs Relied on ICBINB's Label in Deciding to Purchase ICBINB**

64.    Plaintiffs were reasonably diligent consumers looking for products that were fat-free and calorie-free alternatives to butter.

65.    While shopping in grocery stores in and around her home in Novato, California Plaintiff Pardini encountered ICBINB in the refrigerated section of grocery stores. She noted that the product appeared next to butter and margarine – products for which ICBINB was promoted as a fat-free and calorie-free alternative.

66.    Plaintiff Pardini saw and read representations on the front label that ICBINB is "0 g fat" and "0 calories."  Plaintiff also noted that the front label depicted and promoted ICBINB as a butter-flavored topping for foods.

67.    Before deciding to purchase ICBINB, Plaintiff Pardini also inspected the nutritional panel. On the back label, she saw and read representations that ICBINB contains "Calories 0," and

---

[12]    Letter to Food Manufacturers about Accurate Serving Size Declaration on Food Products, March 12, 2004, available at: http://www.fda.gov/Food/LabelingNutrition/FoodLabelingGuidanceRegulatoryInformation/InspectionCompliance/WarningOtherLetters/ucm110234.htm (last accessed July 20, 2012).

"Total Fat 0g." She noted that these statements were consistent with ICBINB's "0 g fat" and "0 calories" claims on the front label. Notably, Plaintiff did not see any disclosure or other indication on the nutritional panel that ICBINB actually contains fats and calories.

68.     Plaintiff Kym Pardini relied on these representations in deciding to purchase ICBINB.  She simply had no reason to doubt that ICBINB was actually free of fat and calories.

69.     Similarly, while shopping in grocery stores in and around her home in Blue Springs, Missouri, Plaintiff Wood encountered ICBINB in the refrigerated section of grocery stores. She noted that the product appeared next to butter and margarine – products for which ICBINB was promoted as a fat-free and calorie-free alternative.

70.     Plaintiff Wood saw and read representations on the front label that ICBINB is "0 g fat" and "0 calories."

71.     Before deciding to purchase ICBINB, Plaintiff Wood inspected the nutritional panel. On the back label, she saw and read representations that ICBINB contains "Calories 0," and "Total Fat 0g." She noted that these statements were consistent with ICBINB's "0 g fat" and "0 calories" claims on the front label. Notably, Plaintiff did not see any disclosure or other indication on the nutritional panel that ICBINB actually contains fats and calories.

72.     Plaintiff Wood relied on these representations in deciding to purchase ICBINB.  She simply had no reason to doubt that ICBINB was actually free of fat and calories.

**F.     Plaintiffs Could Not Have Discovered, in the Exercise of Reasonable Diligence that Defendant's Product Labels Were Misleading**

73.     Plaintiffs were reasonably diligent consumers looking for products that were fat-free and calorie-free alternatives to butter.  Nevertheless, Plaintiffs did not discover that Unilever's labeling was false, deceptive, or misleading until July 2012 and April 2013.

74.     Plaintiffs were unaware that ICBINB contains 124 grams of fat and 1160 calories per 12-ounce bottle and did not quality as "0 g fat" or "0 calories" based on amounts customarily consumed.  Plaintiff was also unaware that ICBINB contained added ingredients that supplied certain amounts of fat per serving.

75.    Plaintiffs are not nutritionists, food experts, or food scientists; Plaintiffs are lay consumers who did not possess Defendant's specialized knowledge or food testing capabilities which would have otherwise enabled them to see through Defendant's deceptive marketing and advertising.

76.    Plaintiffs, in the exercise of reasonable diligence, could not have discovered Defendant's practices earlier because, like nearly all consumers, Plaintiffs do not have food testing capabilities whereby they could have uncovered the true nutritional content of ICBINB.

**G.    Defendant's Misrepresentations Cause Plaintiffs and the Class Ascertainable Damages and Injury**

77.    Plaintiffs purchased ICBINB believing it contained "0 fat" and "0 calories" based on Unilever's deceptive advertising and misrepresentations.

78.    ICBINB costs more than similar products without misleading advertisements and misrepresentations, and would have cost less absent the false and misleading statements.

79.    Plaintiffs and members of the Class paid more for ICBINB than they otherwise would have had they not been misled by the false and misleading advertisements and misrepresentations complained of herein.  Plaintiffs and members of the Class would not have purchased ICBINB at the prices they did, or would not have purchased ICBINB at all, absent Defendant's false and misleading misrepresentations.

80.    For these reasons, ICBINB was worth less than what Plaintiffs and members of the Class paid for it.

81.    Plaintiffs and members of the Class were induced to and did purchase ICBINB instead of competing products based on the false statements and misrepresentations described herein.

82.    Instead of receiving products that have the advantages inherent in being "0 fat" and "0 calories," Plaintiffs and members of the Class received products that were a significant source of fat and calories.

83.    Plaintiffs and members of the Class lost money as a result of Unilever's deception in that they did not receive what they paid for.

84.    Plaintiffs and members of the Class altered their position to their detriment and suffered damages in an amount equal to the amount they paid for ICBINB.

## V.    CLASS ACTION ALLEGATIONS

85.    Plaintiffs seek certification of a Class defined as follows:

> All persons nationwide who purchased I Can't Believe It's Not Butter! Spray ("The Class").  Excluded from the Class are Defendant; the officers, directors or employees of Defendant; any entity in which Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of Defendant; also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action and those claiming that they have suffered any personal injury as a result of consuming Defendant's misbranded products.

86.    Plaintiffs seek certification of a Subclass defined as:

> All persons in the State of California who purchased I Can't Believe It's Not Butter! Spray.  Excluded from the Subclass are Defendant; the officers, directors or employees of Defendant; any entity in which Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of Defendant; also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action and those claiming that they have suffered any personal injury as a result of consuming Defendant's misbranded products.

87.    Plaintiffs seek certification of a Subclass defined as:

> All persons in the State of Missouri who purchased I Can't Believe It's Not Butter! Spray.  Excluded from the Subclass are Defendant; the officers, directors or employees of Defendant; any entity in which Defendant has a controlling interest; and any affiliate, legal representative, heir or assign of Defendant; also excluded are any federal, state or local governmental entities, any judicial officer presiding over this action and the members of his/her immediate family and judicial staff, any juror assigned to this action and those claiming that they have suffered any personal injury as a result of consuming Defendant's misbranded products.

88.    Plaintiffs do not know the exact number of Class and Subclass members at the present time.  However, due to the nature of the trade and commerce involved, there are many thousands of Class members, such that joinder of all Class members is impracticable.

89.     The Class is readily ascertainable through Defendant's business records and notice can be provided by publication and through techniques similar to those customarily used in other consumer fraud cases and complex class actions.

90.     There are questions of law and fact common to the Class and Subclass.  Defendant's advertising, marketing, labeling and promotional practices were supplied uniformly to all members of the Class who were similarly affected by having purchased ICBINB for their intended and foreseeable purpose as a "0 fat" and "0 calorie" topping.

91.     Plaintiffs assert claims that are typical of the Class and Subclass.  Plaintiffs and all Class members have been subjected to the same wrongful conduct because they have all purchased ICBINB which was mislabeled "0 fat" and "0 calories." Like other members of the class, Plaintiffs overpaid for ICBINB and/or purchased a product that they otherwise would not have.

92.     Plaintiffs will fairly and adequately represent and protect the interests of the Class and Subclass.  Plaintiffs are represented by counsel competent and experienced in both consumer protection and class action litigation.

93.     Class certification is appropriate because Defendant has acted on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

94.     Class certification is appropriate because common questions of law and fact substantially predominate over any questions that may affect only individual members of the Class and Subclass, including, *inter alia*, the following:

        a.    Whether Defendant misrepresented or omitted material facts in connection with the promotion, marketing, advertising, packaging, labeling and sale of ICBINB;

        b.    Whether Defendant represented that ICBINB has characteristics, benefits, uses or qualities that it does not have;

        c.    Whether Defendant's nondisclosures and misrepresentations would be material to a reasonable consumer;

        d.    Whether the nondisclosures and misrepresentations were likely to deceive a reasonable consumer in violation of the consumer protection statutes of New Jersey, California and/or Missouri;

e.  Whether the nondisclosures and misrepresentations were likely to deceive a reasonable consumer in violation of the consumer protection statutes of New Jersey, California and/or Missouri;

f.  Whether Unilever breached an express warranty made to Plaintiffs and the Class;

g.  Whether Unilever intentionally misrepresented that ICBINB is "0 fat" and "0 calories";

h.  Whether Defendant's unlawful, unfair and/or deceptive practices harmed Plaintiffs and the members of the Class;

i.  Whether Plaintiffs and the members of the Class are entitled to damages, restitution, and/or equitable or injunctive relief.

95.  A class action is superior to other available methods for the fair and efficient adjudication of this controversy, since joinder of all the individual Class and Subclass members is impracticable.  Furthermore, because the restitution and damages suffered, and continue to be suffered, by each individual Class member may be relatively small, the expense and burden of individual litigation would make it very difficult or impossible for individual Class members to redress the wrongs done to each of them individually and the burden imposed on the judicial system would be enormous.

96.  The prosecution of separate actions by the individual Class and Subclass members would create a risk of inconsistent or varying adjudications with respect to individual Class members, which would establish incompatible standards of conduct for Defendant.  In contrast, the conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

## VI.    CAUSES OF ACTION

### FIRST CAUSE OF ACTION

### FRAUD BY CONCEALMENT

97.  Plaintiffs reallege and incorporate by reference all paragraphs alleged herein.

98.  Plaintiffs bring this claim individually and on behalf of the nationwide Class, or in the alternative, on behalf of a class of California residents.

99.  As set forth above, Unilever concealed material facts concerning the nutritional content of ICBINB.  Unilever had a duty to make these disclosures based on its superior

1   knowledge regarding the composition of its product, as well as its affirmative misrepresentations to

2   the contrary.

3       100.    Unilever actively concealed material facts, in whole or in part, with the intent to

4   induce Plaintiffs and members of the Class to purchase ICBINB.

5       101.    Plaintiffs and the Class were unaware of these omitted material facts and would not

6   have acted as they did if they had known of the concealed facts.

7       102.    As a result of the concealment of the facts, Plaintiffs and the Class sustained

8   damage in an amount to be determined at trial.

9                           **SECOND CAUSE OF ACTION**

10                          **BREACH OF EXPRESS WARRANTY**

11      103.    Plaintiffs reallege and incorporate by reference all paragraphs alleged herein.

12      104.    Plaintiffs bring this claim individually and on behalf of the nationwide Class, or in

13  the alternative, on behalf of a class of California residents.

14      105.    Defendant expressly warranted in its marketing, advertising and promotion of

15  ICBINB that ICBINB is "0 fat" and "0 calories."

16      106.    Plaintiffs and members of the Class purchased ICBINB based on these express

17  warranties.

18      107.    ICBINB is not, however, "0 fat" or "0 calories" as expressly warranted.

19      108.    Plaintiffs and Class members were injured as a direct and proximate result of

20  Defendant's breach because:  (1) they purchased ICBINB and/or at a premium based on

21  Defendant's misleading product labels and (2) ICBINB did not have the composition, attributes,

22  characteristics, nutritional content or value as promised.

23                          **THIRD CAUSE OF ACTION**

24                          **INTENTIONAL MISREPRESENTATION**

25      109.    Plaintiffs reallege and incorporate by reference all paragraphs alleged herein.

26      110.    Plaintiffs bring this claim individually and on behalf of the nationwide Class, or in

27  the alternative, on behalf of a class of California residents.

28

111.    Defendant materially and intentionally mislabeled ICBINB's nutritional values as alleged herein.

112.    Defendant's misrepresentations about the fat and calorie content of ICBINB were intended to influence the purchasing decisions of Plaintiffs and members of the Class who justifiably relied upon the accuracy of Defendant's labels.

113.    Defendant's misrepresentations caused Plaintiffs and the Class to purchase a product that they would not have otherwise purchased and/or at a price that they would not have otherwise paid.

**FOURTH CAUSE OF ACTION**

**VIOLATIONS OF NEW JERSEY'S CONSUMER FRAUD ACT**

114.    Plaintiffs reallege and incorporate by reference all paragraphs alleged herein.

115.    Plaintiffs bring this claim individually and on behalf of the nationwide Class.

116.    New Jersey's consumer fraud statute applies to a class of purchasers of ICBINB, both within and outside of New Jersey, who have been harmed as a result of Defendant's conduct.

117.    New Jersey's contacts with this dispute are both extensive and weighty. Defendant's scheme was devised, implemented and directed from Defendant's offices in New Jersey. Moreover, New Jersey has a substantial interest in preventing fraudulent practices within the State which may have an effect both in New Jersey and throughout the rest of the country.

118.    The New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, *et seq*., makes unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce, unlawful. The act provides: "The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice . . . ." N.J.S.A. § 56:8-2.

119. Defendant violated this section in that: (a) Defendant's conduct in violation of FDCA and accompanying FDA regulations constitutes a *per se* violation of the act; (b) Defendant's practices are unconscionable in that they are unethical, immoral, oppressive and harmful, and depart from the standard of good faith, honesty in fact and fair dealing established under the act; and (c) Defendant's conduct was deceptive, fraudulent, concealing numerous material facts and misrepresenting others all with the result of causing Plaintiffs and the Class to suffer ascertainable losses of money or property.

120. Defendant's conduct described herein constitutes the employment of false pretense, false promise, misrepresentation, misleading statement or deceptive practice upon Plaintiffs and the Class within the meaning of the act.

121. Plaintiffs and the Class suffered ascertainable losses as a result of Defendant's unlawful conduct.

122. Plaintiffs and the Class are entitled to three times their ascertainable losses pursuant to N.J.S.A. §§ 56:8-19. In addition, Defendant's conduct is subject to an award of attorney's fees and costs and any other appropriate legal or equitable relief as provided under N.J.S.A. 56:8-19.

123. Plaintiffs and the Class seek court-ordered relief of an equitable nature against Defendant, including, but not limited to, orders declaring Defendant's practices as alleged to be unlawful, unfair, unconscionable and/or deceptive, and enjoining Defendant from undertaking any further unlawful, unfair, unconscionable and/or deceptive acts or omissions.

124. Plaintiffs and the Class seek disgorgement and restitution of all monies paid to Defendant for as a result of Defendant's unlawful acts, plus interest on damages at the legal rate, and/or three times the amount of their economic damages.

### FIFTH CAUSE OF ACTION

### VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT
#### (CAL. CIV. CODE § 1750, *et seq.*)

125. Plaintiffs reallege and incorporate by reference all paragraphs alleged herein.

126. Plaintiffs bring this claim individually and on behalf of the California Subclass.

127.   Defendant is a "person" under Cal. Civ. Code § 1761(c).

128.   Plaintiffs are "consumer," as defined by Cal. Civ. Code § 1761(d), who purchased ICBINB sold by Defendant.

129.   Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristic, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."  Defendant violated this provision by misrepresenting that ICBINB is "0 fat" and "0 calories."

130.   Cal. Civ. Code § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."  Defendant violated this provision by misrepresenting that ICBINB is "0 fat" and "0 calories."

131.   Cal. Civ. Code § 1770(a)(9) prohibits "[r]epresenting goods or services with intent not to sell them as advertised."  Defendant violated this provision by misrepresenting that ICBINB is "0 fat" and "0 calories."

132.   Plaintiffs and the Subclass suffered lost money or property as a result of these violations because:  (a) they would not have purchased ICBINB on the same terms if the true facts concerning this product had been known; (b) they paid a premium due to the false representations about the products; and (c) ICBINB is not "0 fat" or "0 calories."

133.   As a result of these violations, Defendant has caused and continues to cause actual damage to Plaintiffs and members of the Subclass and, if not stopped, will continue to harm them.

134.   On April 12, 2013, Plaintiff Pardini commenced an action for injunctive relief under the CLRA.  In accordance with Cal. Civil Code § 1780(a), Plaintiffs and members of the Subclass sought and continue to seek injunctive and equitable relief for Defendant's violations of the CLRA. In addition, having mailed appropriate notice and demand in accordance with Cal. Civil Code § 1782(a) & (d), Plaintiffs hereby amend this Complaint to include a request for damages.  In particular, pursuant to and in accordance with §1782, Plaintiff sent written notice to Defendant via certified mail, received by Defendant on May 13, 2013, addressing the alleged violations under

CLRA §1770 as detailed in the Complaint (based on the marketing, labeling, and sale of ICBINB as 0 fat and 0 calorie), demanding that Defendant reimburse Plaintiff and class members for the violations of §1770 alleged in the Complaint, and demanding that Defendant notify class members of the lawsuit.  Within 30 days of receiving Plaintiff's notice, Defendant failed to make reimbursements or other remedies requested by Plaintiff, and Defendant failed to agree to give the requested remedies within a reasonable time.  Furthermore, Defendant failed to identify similarly-situated consumers who purchased ICBINB; Defendant failed to notify such consumers that upon their request Defendant shall make the appropriate reimbursement or other remedy; Defendant did not give the reimbursements or notice requested on behalf of such consumers, and Defendant did not offer to do so in a reasonable time.  Further, Defendant did not cease from engaging in the alleged CLRA violations, and Defendant did not agree to do so in a reasonable time.  On or about June 5, 2013, Unilever's counsel responded to Plaintiff's CLRA letter pursuant to §1782 by indicating that the requested reimbursement would not be made.  Accordingly, Plaintiffs now amend their complaint to include a request for damages under the CLRA, and Plaintiffs seek all relief authorized under Civil Code § 1780, including attorneys' fees and costs, as requested more fully in the Prayer for Relief.

135.    Plaintiff Pardini includes an affidavit with this Complaint that shows venue in this District is proper, to the extent such an affidavit is required by Cal. Civil Code § 1780(d) in federal court.

## SIXTH CAUSE OF ACTION

## VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW
### (CAL. BUS. & PROF. CODE § 17200, *et seq.*)

136.    Plaintiffs reallege and incorporate by reference all paragraphs alleged herein.

137.    Plaintiffs bring this claim individually and on behalf of the California Subclass.

138.    California Business and Professions Code § 17200 prohibits any "unlawful, unfair, or fraudulent business act or practice."  Unilever has engaged in unlawful, fraudulent, and unfair business acts and practices in violation of the UCL.

1    139.    Unilever has violated the unlawful prong by its violation of the CLRA described

2    above.

3    140.    Unilever has violated the fraudulent prong of section 17200 because the

4    misrepresentations and omissions regarding the nutritional content of ICBINB as set forth in this

5    Complaint were likely to deceive a reasonable consumer, and the information would be material to

6    a reasonable consumer.

7    141.    Unilever has violated the unfair prong of section 17200 because the acts and

8    practices set forth in the Complaint offend established public policy and because the harm they

9    cause to consumers greatly outweighs any benefits associated with those practices.  Unilever's

10    conduct has also impaired competition within the butter-substitute market and has prevented

11    Plaintiffs from making fully informed decisions about whether to purchase ICBINB and/or the

12    price to be paid.  Defendant's conduct also offends established public policy.

13    142.    The named Plaintiffs have suffered injury in fact, including the loss of money or

14    property, as a result of Defendant's unfair, unlawful and/or deceptive practices.  As set forth in the

15    allegations concerning Plaintiffs, in purchasing ICBINB, Plaintiffs relied on the misrepresentations

16    and omissions of Unilever.  Had they known the truth about ICBINB's fat and calorie content, they

17    would not have purchased ICBINB and/or paid as much for it.

18    143.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the

19    conduct of Defendant's business.  Defendant's wrongful conduct is part of a pattern or generalized

20    course of conduct that is still perpetuated and repeated throughout the State of California.

21    144.    Plaintiffs request that this Court enter such orders or judgments as may be necessary

22    to enjoin Defendant from continuing its unfair, unlawful, and/or deceptive practices and to restore

23    to Plaintiffs and members of the Subclass any money Unilever acquired by unfair competition, as

24    provided in Cal. Bus. & Prof. Code § 17203, and for such other relief set forth below.

25    **SEVENTH CAUSE OF ACTION**

26    **VIOLATIONS OF THE MISSOURI MERCHANDISING PRACTICES ACT**

27    145.    Plaintiffs reallege and incorporate by reference all paragraphs alleged herein.

28

146.    Plaintiffs brings this claim on behalf of the Subclass under the Missouri Merchandising Practices Act, codified at Mo. Rev. Stat. §§ 407.010 *et seq.*

147.    The acts and practices engaged in by Defendant, and described herein, constitute unlawful, unfair and/or fraudulent business practices in violation of the Missouri Merchandising Practices Act, R.S.Mo. §§ 407.010 *et seq.*

148.    Defendant engaged in unlawful practices including deception, false promises, misrepresentation, and/or the concealment, suppression, or omission of material facts in connection with the sale, distribution or advertisement of ICBINB, in violation of R.S.Mo. §§ 407.020.

149.    Plaintiff purchased ICBINB, products that were falsely represented, as stated above, in violation of the Missouri Merchandising Practices Act and as a direct and proximate result Plaintiff suffered economic damages in that the product she and other class members purchased was worth less than the product she thought she had purchased had Defendant's labeling and representations been true.

## VII.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf all others similarly situated, respectfully requests that this Court enter a judgment against Unilever and in favor of Plaintiffs, and grant the following relief:

A.    Determine that this action may be maintained as a Class action with respect to the Class and Subclass identified herein and certify it as such under Rules 23(b)(2) and 23(b)(3), or alternatively certify all issues and claims that are appropriately certified, and designate and appoint Plaintiffs as Class Representatives and their counsel as Class Counsel;

B.    Declare, adjudge and decree the conduct of the Defendant as alleged herein to be unlawful, unfair and/or deceptive;

C.    Notify all Class and Subclass members of the truth regarding the fat and calorie content of ICBINB;

D.    Award Plaintiffs, the Class, and Subclass members actual, compensatory damages, as proven at trial;

1

      E.      Award Plaintiffs, the Class, and Subclass restitution of all monies paid to Defendant

2

as a result of unlawful, deceptive, and unfair business practices;

3

      F.      Award Plaintiffs, the Class, and Subclass members exemplary damages in such

4

amount as proven at trial;

5

      G.      Award Plaintiffs and the Class and Subclass members reasonable attorneys' fees,

6

costs, and pre- and post-judgment interest; and

7

      H.      Award Plaintiffs and the Class and Subclass members such other further and

8

different relief as the nature of the case may require or as may be determined to be just, equitable,

9

and proper by this Court.

10

11

## VIII.   JURY TRIAL DEMAND

12

      Plaintiffs, by counsel, request a trial by jury on their legal claims, as set forth herein.

13

14

DATED: September 20, 2013             HAGENS BERMAN SOBOL SHAPIRO LLP

15

16

                       By         /s/ Lee Gordon

17

18

                       Steve Berman
                       1918 Eighth Avenue, Suite 3300

19

                       Seattle, WA  98101
                       Telephone:  (206) 623-7292

20

                       Facsimile:  (206) 623-0594
                       steve@hbsslaw.com

21

22

                       Lee M. Gordon
                       HAGENS BERMAN SOBOL SHAPIRO LLP

23

                       301 North Lake Avenue, Suite 203
                       Pasadena, CA  91101

24

                       Telephone:  (213) 330-7150
                       Facsimile:  (213) 330-7152

25

                       E-mail: lee@hbsslaw.com

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Ureka Idstrom (*Pro Hac Vice*)
THE EUREKA LAW FIRM
6744 Holmes Road
Kansas City, MO  64131
Telephone:  (816) 665-3515
uidstrom@eurekalawfirm.com
                    -and-
Shana E. Scarlett (217895)
HAGENS BERMAN SOBOL SHAPIRO LLP
715 Hearst Avenue, Suite 202
Berkeley, CA  94710
Telephone: (510) 725-3000
Facsimile: (510) 725-3001
shanas@hbsslaw.com

*Attorneys for Plaintiffs and the Proposed Class*

1

2

## DECLARATION RE CLRA VENUE

3

I, Kym Pardini, do hereby declare and state as follows:

4

1.    I am a party plaintiff in *Kym Pardini on behalf of herself and all others similarly*

5

*situated v. Unilever United States, Inc. a Delaware corporation*.  Pursuant to CAL. CIV. CODE

6

§ 1780(d), I make this declaration in support of the Class Action Complaint and the claim therein

7

for relief under CAL. CIV. CODE § 1780(a).  I have personal knowledge of the facts stated herein

8

and, if necessary, could competently testify thereto.

9

2.    This action for relief under CAL. CIV. CODE § 1780(a) has been commenced in a

10

county that is a proper place for trial of this action because Unilever does business throughout the

11

State of California.

12

This declaration is signed under penalty of perjury under the laws of the State of California

13

this 8th day of August, 2013.

14

_____
K Pardini

15

Kym Pardini

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## CERTIFICATE OF SERVICE

2          I hereby certify that on September 19, 2013, I electronically filed the foregoing document

3   using the CM/ECF system which will send notification of such filing to the e-mail addresses

4   registered in the CM/ECF system, as denoted on the Electronic Mail Notice List, and I hereby

5   certify that I have caused to be mailed a paper copy of the foregoing document via the United

6   States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List

7   generated by the CM/ECF system.

8                                                      /s/ Lee M. Gordon
                                                  LEE M. GORDON
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28