**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

KYM PARDINI and CARRIE WOOD, on ) Case No. 13-1675 SC
behalf of themselves and other   )
others similarly situated,       ) ORDER GRANTING IN PART AND
                                 ) DENYING IN PART MOTION TO
            Plaintiffs,          ) <u>DISMISS</u>
                                 )
        v.                       )
                                 )
UNILEVER UNITED STATES, INC.,    )
                                 )
            Defendant.           )
_____)

I.   **INTRODUCTION**

     Plaintiffs Kym Pardini and Carrie Wood (collectively
"Plaintiffs") bring this putative class action in connection with
Defendant Unilever United States, Inc.'s ("Defendant") marketing of
I Can't Believe It's Not Butter! Spray.  Defendant now moves to
dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  ECF
No. 33 ("Mot.").  The Motion is fully briefed, ECF Nos. 34
("Opp'n"), 35 ("Reply"), and appropriate for determination without
oral argument per Civil Local Rule 7-1(b).  For the reasons
described below, the Motion is GRANTED in part and DENIED in part.
///
///

**II.   BACKGROUND**

    **A.   Factual**

    As it must on a Rule 12(b)(6) motion to dismiss, the Court takes all well-pleaded allegations as true.  I Can't Believe It's Not Butter! is the second largest margarine brand in the United States.  SAC ¶ 17.  The product at issue in this case, I Can't Believe It's Not Butter! Spray ("ICBINBS") is marketed as a "0 Calorie" and "0 Fat" alternative to butter.  Id. ¶ 25.  The Court takes judicial notice of the fact that the product is dispensed via manual pump, with each pump delivering a squirt of oil.  See Compl. Figure 1 ("Front Label").

    The front label of the ICBINBS packaging prominently states that the product is "Great for Topping & Cooking" and contains "0 Calories per serving" and "0 g Trans Fat* per serving."  Id.  The asterisk refers to an explanatory phrase printed in smaller type immediately below: "Contains 0 g fat (0 g saturated fat), and 0 g trans fat per serving, see nutrition information for serving size."  Id.

    The back of the packaging displays the "nutrition panel," which states "Calories 0" and "Calories from Fat 0."  Compl. Figure 2 ("Back Label").  The nutrition panel states that the serving size is "1 Spray (0.20g) Cooking Spray" or "5 Sprays (1g) per Topping."  Id.  The nutrition panel also discloses the fat, cholesterol, and sodium per serving and the product's ingredients.  Id.  The first three listed ingredients are water, liquid soybean oil, and sweet cream buttermilk.  Id.  Next to "sweet cream buttermilk" in the ingredients list, there is an asterisk, which cites to the following footnote: "Adds a dietarily insignificant amount of

cholesterol." Id. Figure 2.

Plaintiffs claim that Defendant's "0 Fat" and "0 Calorie" representations are false and misleading because the listed serving sizes fail to account for the manner in which ICBINBS is customarily used. SAC ¶ 6. Essentially, Plaintiffs allege that Defendant has set an artificially small serving size so that the calories and fat per serving can be rounded down to zero. Plaintiffs allege that each bottle of ICBINBS actually contains 1160 calories and 124 grams of fat, meaning that each recommended serving of cooking spray (one spray) contains about 0.8 calories and 0.08 grams of fat, and each recommended serving of topping (five sprays) contains about 4 calories and 0.4 grams of fat. Id. ¶ 26.[1] Plaintiffs also allege that the label does not disclose that ICBINBS contains ingredients that are fats and which, even in small quantities, add certain amounts of fat and calories per serving. Id. ¶ 7. Plaintiffs allege that the soybean oil and buttermilk ingredients listed in the nutrition panel should have been followed by an asterisk and language disclosing the presence of fat. Id. ¶ 31.

Plaintiff Pardini is from California, and Plaintiff Wood is from Missouri. They represent two putative state classes. Plaintiffs are reasonably diligent consumers who sought to buy fat-free and calorie-free alternatives to butter. Id. ¶ 64. They inspected the ICBINBS bottle and purchased it believing it to be such a product, paying a premium they would not have paid had they

---

[1] The Court questions why Plaintiffs changed this total measurement of fat and calories from their original complaint. See ECF No. 1 ("Compl.") ¶ 4 ("ICBINB contains 771 calories and 82 grams of fat per bottle."). However, this does not affect the Court's holding.

**United States District Court**
For the Northern District of California

1  known the product's full fat and calorie content.  Id. ¶¶ 64-67.

2  Plaintiffs assert that Defendant violated the Federal Food,

3  Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 et seq., and its

4  implementing regulations by (1) failing to adequately disclose the

5  level of fat and calories per serving in accordance with 21 U.S.C.

6  § 343(q), and 21 C.F.R. § 101.9(b)(1); and (2) making "fat free"

7  and "zero calorie" nutrient content claims in violation of 21

8  U.S.C. § 343(r), 21 C.F.R. §§ 101.13(b), 101.62(a)(3), and

9  101.60(a)(3).  Plaintiffs assert the following causes of action

10  against Defendant: (1) fraud by concealment, (2) breach of express

11  warranty, (3) intentional misrepresentation, (4) violations of New

12  Jersey's Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-1, et

13  seq., (5) violations of California's Consumer Legal Remedies Act

14  ("CLRA"), Cal. Civ. Code § 1750, et seq., (6) violations of

15  California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code

16  § 17200, et seq., and (7) violations of the Missouri Merchandising

17  Practices Act ("MMPA"), Mo. Rev. Stat. § 407.010, et seq.

18  **B.  Procedural**

19  The operative pleading is Plaintiffs' second amended

20  complaint.  The original complaint did not include Plaintiff Wood.

21  Plaintiffs Wood and Pardini now allege the same basic facts, though

22  Ms. Pardini's claims arise in California and Ms. Wood's in

23  Missouri.  The Court previously dismissed Plaintiff Pardini's

24  complaint in its July 9 Order, ECF No. 24, Case No. 13-1675 SC,

25  2013 WL 3456872 (N.D. Cal. July 9, 2013).  In the July 9 Order, the

26  Court found Ms. Pardini's claims preempted except to the extent

27  that they were predicated on Defendant's failure to provide a

28  notation on the nutrition panel that certain ingredients contain

4

fat (the "asterisk claim").[2]   The Court dismissed all of Plaintiff

Pardini's claims with leave to amend, except her unjust enrichment

claim, which was dismissed with prejudice.

## III. **LEGAL STANDARD**

A motion to dismiss under Federal Rule of Civil Procedure

12(b)(6) "tests the legal sufficiency of a claim." Navarro v.

Block, 250 F.3d 729, 732 (9th Cir. 2001).  "Dismissal can be based

on the lack of a cognizable legal theory or the absence of

sufficient facts alleged under a cognizable legal theory."

Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.

1988).  "When there are well-pleaded factual allegations, a court

should assume their veracity and then determine whether they

plausibly give rise to an entitlement to relief." Ashcroft v.

Iqbal, 556 U.S. 662, 679 (2009).  However, "the tenet that a court

must accept as true all of the allegations contained in a complaint

is inapplicable to legal conclusions.  Threadbare recitals of the

elements of a cause of action, supported by mere conclusory

statements, do not suffice." Id. (citing Bell Atl. Corp. v.

Twombly, 550 U.S. 544, 555 (2007)).

Claims sounding in fraud are subject to the heightened

pleading requirements of Federal Rule of Civil Procedure 9(b),

which requires that a plaintiff alleging fraud "must state with

particularity the circumstances constituting fraud." See Kearns v.

Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009).  "To satisfy

---

[2] In discussing the July 9 Order, the Court sometimes refers to
"Plaintiffs," for the sake of consistency throughout this Order.
While Ms. Wood was not a party to the complaint then, her inclusion
now affects nothing in this Order except the Court's consideration
of Plaintiffs' non-California claims.

1   Rule 9(b), a pleading must identify the who, what, when, where, and

2   how of the misconduct charged, as well as what is false or

3   misleading about [the purportedly fraudulent] statement, and why it

4   is false."  United States ex rel Cafasso v. Gen. Dynamics C4 Sys.,

5   Inc., 637 F.3d 1047, 1055 (9th Cir. 2011) (quotation marks and

6   citations omitted).

7

8   **IV.  DISCUSSION**

9        Defendant's main argument in favor of dismissal is that

10  Plaintiffs' claims are preempted.  It also contends that

11  Plaintiffs' individual claims fail for a variety of pleading and

12  legal reasons.[3]

13       **A.   Preemption**

14       In its July 9 Order, the Court held that Plaintiffs' claims

15  were preempted by 21 C.F.R. § 101.12(b).  July 9 Order at *5.

16  Defendant maintains that Plaintiffs' amended claims are also

17  preempted.

18       The FDCA, as amended by the Nutrition Labeling and Education

19  Act of 1990 ("NLEA"), sets forth a comprehensive set of food

20  labeling requirements.  See 21 U.S.C. § 343.  The many subsections

21  of 21 U.S.C. § 343 establish the conditions under which food is

22  considered "misbranded."  Sections 343(q) and 343(r) regulate the

23  information that must be included in all packed products' nutrition

24  panel as well as all other nutrient content claims that appear

25  elsewhere on the label.  The FDCA contains a broad preemption

26  provision that prohibits states or other political subdivisions

27

28  _____

[3] Defendant also contends that Plaintiffs' complaint should be
dismissed on primary jurisdiction grounds, but the Court again
declines to entertain that theory.  See July 9 Order at *5 n.5.

United States District Court
For the Northern District of California

1   from directly or indirectly establishing any requirement for

2   nutrition labeling that is not identical to the requirements set

3   forth in § 343(q) or § 343(r).  Id. § 343-1(a)(4)-(5).  In arguing

4   preemption, it is Defendant's burden in this case to show that the

5   strong presumption against preemption -- especially with regard to

6   states' capacity to regulate the proper marketing of food -- is

7   overcome.  See Brazil v. Dole Food Co., Inc., 935 F. Supp. 2d 947,

8   955 (N.D. Cal. 2013) (citing Fla. Lime & Avocado Growers v. Paul,

9   373 U.S. 132, 144 (1963)).

10       Here, Defendant argues that all of Plaintiff's claims are

11  preempted because they impose requirements that are not identical

12  to the FDCA and regulations promulgated by the U.S. Food and Drug

13  Administration ("FDA") pursuant to the FDCA.  Specifically,

14  Defendant argues that the FDCA preempts Plaintiff's claims that:

15  (1) Defendant used artificially small serving sizes to understate

16  the amount of calories and fat contained in ICBINBS; (2) Defendant

17  made unlawful "0 Fat" and "0 Calories" nutrient content claims; and

18  (3) Defendant omitted the asterisk and explanatory notation

19  required when making "0 fat" claims on the front label.

20  Alternatively, Defendant argues that Plaintiff's claims are

21  preempted because the FDCA does not provide for a private right of

22  action.

23       Plaintiffs must navigate a narrow gap to avoid preemption:

24  "they must sue for conduct that specifically violates the FDCA to

25  avoid express preemption, but they cannot sue because the conduct

26  violates the FDCA."  Allen v. ConAgra Foods, Inc., No. 13-cv-01279-

27  JST, 2013 WL 4737421, at *8 (N.D. Cal. Sept. 3, 2013) (emphases in

28  the original) (citations and quotations omitted).

**United States District Court**
For the Northern District of California

### 1.    Plaintiffs' "Serving Size" Claim

Where a single serving of a particular product contains less than 0.5 grams of fat, FDA regulations provide that the product's label shall express the fat content per serving as zero.  21 C.F.R. § 101.9(c)(2).  Likewise, calories per serving may be expressed as zero where a product contains less than five calories per serving. Id. § 101.9(c)(1).  The crux of Plaintiffs' serving size claim is that Defendant used unlawful serving sizes so that it could round down to zero ICBINBS's fat and calories per serving.  The FDCA provides that a food label must list "the serving size which is an amount customarily consumed and which is expressed in a common household measure that is appropriate to the food."  21 U.S.C. § 343(q)(1)(A)(i).  Plaintiffs allege that the suggested serving sizes for ICBINBS -- one spray (or 0.20 grams) for "Cooking Spray," and five sprays (or 1.0 grams) for "Topping" -- are smaller than the amount customarily consumed.  See SAC ¶¶ 32-38.

Defendant contends that Plaintiffs' serving size claim is preempted since ICBINBS's serving sizes are consistent with FDA regulations.  Mot. at 4-5.  Specifically, Defendant points to 21 C.F.R. § 101.12, which sets forth the reference amounts customarily consumed per eating occasion (the "Reference Amount") for various categories of food products.  Id.  According to that regulation, the Reference Amount for "Fats and Oils: Spray types" is 0.25 grams.  21 C.F.R. 101.12(b) (Table 2).  Defendant maintains that "[b]ecause ICBINBS is labeled as a spray and functions as a spray, it is a spray, and therefore must be categorized in this group." Mot. at 5.  Defendant contends that the "Cooking Spray" and "Topping" serving sizes listed in ICBINBS's nutrition facts comply

**United States District Court**
For the Northern District of California

with the 0.25-gram Reference Amount for "Fats and Oils: Spray types." Id. Defendant argues that at 1.0 grams, the five-spray "Topping" serving size is four times the required amount. Mot. at 5. At one spray (0.20 grams), the "Cooking Spray" serving size is slightly smaller than the 0.25-gram Reference Amount. However, Defendant argues that the listed serving size is a proper translation of the Reference Amount pursuant to the regulation, id., which provides that "[m]anufacturers are required to covert the [Reference Amount] to the label serving size in a household measure most appropriate to their specific product," 21 C.F.R. § 101.12(b) n.3.

Plaintiffs' main contention here is that the "spray types" category does not apply to ICBINBS. Opp'n at 7. First, to support this point, they claim that FDA Guidance provides that "spray types" are limited to "nonstick cooking sprays." Id. at 7 & n.11. Second, Plaintiffs claim that ICBINBS is not a "true non-stick cooking spray," which should be "nearly 100% oil," and should use gas as a propellant to emit a continuous spray of lubricant for cookware -- as opposed to ICBINBS's partial oil content and pump mechanism. Id. Third, Plaintiffs allege that the major intended use of ICBINBS is not for non-stick cooking purposes, but rather as a food topping or alternative to butter, rendering it subject to different serving size requirements. See id. at 8-9. Finally, along these lines, Plaintiffs claim that ICBINBS did not use the appropriate reference amount, since it should have used the butter-alternative reference amount of one tablespoon (or forty sprays). Id. at 9. Plaintiffs state that even if this sounds like a lot for a spray bottle, Defendant was still obliged to follow the FDA's

**United States District Court**
For the Northern District of California

1  rules or to ask for a new product sub-category.  <u>Id.</u> at 9-10.

2      The Court is not convinced by any of these arguments, which

3  mostly restate rejected arguments from Defendant's motion to

4  dismiss the FAC.  <u>See</u> July 9 Order at 9-10 (rejecting the argument

5  that ICBINBS cannot be a "nonstick cooking spray" because of its

6  fat content and means of propulsion), 10 (rejecting the argument

7  that sprays and toppings are exclusive categories).

8      First, Plaintiffs never cite any authority suggesting that the

9  FDA's scant examples of spray-type fats and oils are exclusive.

10  The Court is not convinced that Plaintiffs' arguments prove that

11  the FDA meant to restrict the "spray type" category as far as

12  Plaintiffs claim.

13     Second, and more broadly, Plaintiffs fail to give a plausible

14  account of how ambiguous labels and advertisements, alongside one

15  consumer's apparently unscrewing the spray cap to dump out the

16  product, show that ICBINBS is not a spray-type fat or oil.

17  Plaintiffs contend that consumers use ICBINBS as a topping, that

18  they generally use "more than five sprays [for toppings] to achieve

19  a buttery flavor," that consumers don't really use ICBINBS as a

20  lubricating cooking spray, and that images on ICBINBS's label (corn

21  on the cob) and recipes on Defendant's website all support a

22  conclusion that the product should be categorized as a topping, not

23  a spray.  <u>See</u> SAC ¶¶ 39-57.  The Court finds that the examples

24  Plaintiffs plead do not plausibly support Plaintiffs' conclusion.

25     The Court finds it far more plausible in this case that, as

26  Plaintiffs themselves state, "Manufacturers must use the defaulted

27  serving size of one tablespoon for any 'Fat and Oil' <u>unless the</u>

28  <u>product fits within a more specific subcategory</u>."  <u>Id.</u> ¶ 36

1   (emphasis added).  The subcategory here, according to the

2   regulations and the face of Plaintiffs' complaint, is "Fats and

3   Oils: Spray Type."  The FDA has calculated Reference Amounts based

4   on national food consumption surveys -- and it is the agency, not

5   the courts or consumers, who set these standards.  21 C.F.R. §

6   101.12(a)(1)(2).  Indeed, products in a form for which there is an

7   established reference amount in Table 2 of the regulations are

8   required to use the listed amount.  <u>See</u> 58 Fed. Reg. 44039, 44047

9   (Aug. 18, 1993).  It is true that the food at issue is in the form

10  of a liquid fat or oil, but more specifically it is a spray-type

11  fat or oil.[4]  The Court does not find that the fact that some

12  consumers might choose to use more of a product means that the

13  product is mislabeled.  Plaintiffs' pleadings stretch plausibility

14  too far, suggesting a state of regulatory affairs in which any

15  consumer could overcome a motion to dismiss in a case like this one

16  by insisting that people consume more (or less) of a product these

17  days, rendering all sorts of products mislabeled at a consumer's

18  whim.

19       In any event, Plaintiffs continue to fail to state

20  definitively how ICBINBS should be classified and what its serving

21  sizes should be (except to say that it is misclassified and its

22  serving sizes are, regardless of the measurements given,

23  artificially low).  The Court specifically asked Plaintiffs to

24  account for these issues, and it finds that Plaintiffs again fail

25  _____

26  [4] Plaintiffs again raise the issues of whether a "spray" is a
    serving size under FDA regulations, and whether Defendant's serving
27  size being .2 grams (as opposed to the Reference Amount's .25
    grams) means that Defendant mislabeled the product.  The Court
28  addressed these matters in its July 9 Order, and does not reopen
    the issues here: the Court's ruling is the same.

**United States District Court**
For the Northern District of California

1    to do so.  See July 9 Order at *5.  The Court finds that

2    Plaintiffs' pleadings on this matter further suggest that the

3    requirements they contend are applicable actually differ from the

4    FDA's regulations, thereby preempting this argument.

5         Third, Plaintiffs' insistence that the serving size should be

6    listed as forty sprays remains implausible.  See July 9 Order at

7    *4.  This finding further supports the finding that ICBINBS is

8    properly labeled as a spray type.

9         Along those lines, Plaintiffs contend that even if ICBINBS is

10   a spray type, it should have a second nutrition panel providing a

11   topping serving size of ten sprays.  See Opp'n at 11-12.  According

12   to Plaintiffs, consumers customarily use ten sprays of ICBINBS when

13   using it as a topping.  Opp'n at 12.  There are two problems with

14   this argument.  First, Plaintiffs never actually pled this.  They

15   assert it in a proposed third amended complaint, so it is not the

16   operative pleading.  The Court rejects the argument on those

17   grounds.  Second, even if the proposed complaint controlled here,

18   the Court rejects Plaintiffs' arguments for the same reasons as

19   above.  The serving size suggested by Plaintiffs appears nowhere in

20   the regulations.  Plaintiffs are substituting their own desires for

21   the FDA's considered regulations, which the Court has found apply

22   to this case, so this line of argument is preempted.  In any event,

23   the regulation Plaintiffs cite -- 21 C.F.R. § 101(9)(b)(11) --

24   specifically states that products used for multipurposes (e.g.,

25   margarine or oils) are exempt from this requirement.  ICBINBS, per

26   Plaintiffs' allegations, appears to fit that requirement (though

27   Plaintiffs contend that it is more a spread than a topping).

28   Plaintiffs' proposal would be inconsistent with the regulation, so

**United States District Court**
For the Northern District of California

1 it is preempted.

2  Finally, the Court is not convinced by Plaintiffs' assertion

3 that the idea that a consumer should get 1700 servings from a

4 single bottle is implausible.  Plaintiffs do not support this

5 contention with any regulatory, factual, or legal authority.

6  For these reasons, the Court finds that Plaintiff's serving

7 size claim is preempted by 21 C.F.R. § 101.12(b).  The claim is

8 DISMISSED WITH PREJUDICE.

9    **2. Plaintiffs' "Nutrient Content" Claim**

10  Because Plaintiffs' serving size claims are dismissed, as

11 above, Plaintiffs' nutrient content claim is likewise DISMISSED,

12 this time WITH PREJUDICE.  Plaintiffs refer, in their opposition,

13 to some non-binding FDA guidance that the Court does not find

14 compelling.  Defendant's rounded figures were appropriate, and the

15 Court does not find that section of the front label to be

16 misleading under section 343(a) because, in context of the

17 statements on the label, Plaintiffs' allegations that Defendant

18 makes a "fat free" representation is clearly incorrect and

19 implausible.

20    **3. Plaintiffs' "Asterisk" Claim**

21  In its July 9 Order, the Court held that Plaintiffs' "asterisk

22 claim" was not preempted, because that claim aligned with 21 C.F.R.

23 § 101.62(b).  Now Defendant contends that this regulation is

24 inapplicable, and that the Court should have evaluated Plaintiffs'

25 claims and Defendant's label according to a different regulation,

26 which Defendant argues controls here and preempts Plaintiffs'

27 asterisk claim.

28  Plaintiffs' asterisk claim is based on a small statement on

1  ICBINBS's front label: "*Contains 0 g fat (0 g saturated fat), and

2  0 g trans fat per serving, see nutrition information for serving

3  size." This statement appears in small type below a statement in

4  large type: "0 g Trans Fat* Per Serving," with the asterisk next to

5  "Trans Fat" directing the reader to the statement in smaller type.

6  SAC ¶¶ 23-25 & Figure 2.

7       Whether or not this claim is preempted turns on 21 C.F.R. §

8  101.62(b), which governs "fat content claims." Section 101.62(b)

9  provides that the terms "no fat" or "zero fat" may be used "on the

10  label or in labeling of foods," provided that:

12       (i) The food contains less than 0.5 gram (g) of fat
         per reference amount customarily consumed and per
13       labeled serving or, in the case of a meal product or
         main dish product, less than 0.5 g of fat per labeled
14       serving; and

15       (ii) The food contains no added ingredient that is a
         fat or is generally understood by consumers to contain
16       fat unless the listing of the ingredient in the
         ingredient statement is followed by an asterisk that
17       refers to the statement below the list of ingredients,
         which states "adds a trivial amount of fat," "adds a
         negligible amount of fat," or "adds a dietarily
18       insignificant amount of fat;" . . . .

20  21 C.F.R. § 101.62(b)(1)(i)-(ii). In other words, a product that

21  contains less than 0.5 grams of fat per serving may be labeled as

22  "zero fat" so long as (1) the product contains no ingredient that

23  is a fat or contains fat, or (2) the nutrition panel denotes the

24  ingredients that are fat or contain fat with an asterisk and an

25  explanatory statement. Plaintiffs essentially allege that because

26  the ICBINBS packaging makes a "zero fat" nutrient content claim,

27  the nutrition label must include an asterisk next to "soybean oil"

28  and "buttermilk" and a notation indicating that these ingredients

1 contain some amount of fat.

2     In the July 9 Order, the Court carefully considered all of

3 Defendant's arguments and rejected them.  The Court declines to

4 restate its findings on those contentions here, but notes that to

5 the extent Defendant replicates any of its failed arguments, they

6 are rejected again.

7     Defendant's main argument is that 21 C.F.R. § 101.13(i)(3),

8 which regulates quantity claims -- a type of nutrient content claim

9 -- governs the statements in question, so Defendant's label does

10 not have to comply with section 101.62(b).  Section 101.13(i)(3)

11 exempts from the disclaimer requirement nutrient content claims

12 that do not "in any way implicitly characterize the level of the

13 nutrient in the food and [are] not false or misleading in any

14 respect (e.g., '100 calories' or '5 grams of fat'), in which case

15 no disclaimer is required."  As in the July 9 Order, the Court

16 finds no support for the contention that section 101.62(b) only

17 applies when a label makes claims about an entire product having

18 zero fat.  July 9 Order at *7.  Moreover, section 101.62(b)(i)(3)

19 refers to nutrient claims per serving size, "suggesting that the

20 regulation's requirements extend to nutrient content claims that

21 are expressed per serving."  Id.  And again, it appears that the

22 regulation's clear intent is to provide consumers with a warning

23 that a product contains at least some fat, regardless of a "fat

24 free" label (in whatever form).  Id.  The Court finds that the

25 statement is subject to section 101.62, the more specific

26 regulation that requires disclaimers when a food label claims that

27 the product contains no fat.

28     Accordingly, the Court finds that Plaintiffs' asterisk claim

United States District Court
For the Northern District of California

is not preempted.

**B.   Other Claims**

Defendant argues that, even if Plaintiffs' claims are not preempted, they must be dismissed because: (1) Plaintiffs have failed to plead their fraud-based claims with the requisite particularity, (2) Plaintiffs' Missouri Merchandising Practices Act is barred, (3) Plaintiffs' New Jersey Consumer Fraud Act Claim fails, and (4) Plaintiffs' breach of express warranty claim fails. Since the Court has found that Plaintiffs' serving size and nutrient content claims are preempted, see Section IV.A supra, only Plaintiffs' asterisk claim can support their causes of action.

**1.   Fraud Claims**

Defendant argues that Plaintiffs fail to plead their fraud claims -- fraud by concealment, intentional misrepresentation, UCL, CLRA, MMPA, and NJCFA -- with sufficient particularity.[5] See Kearns, 567 F.3d at 1125 (state law claims grounded in fraud must satisfy the particularity requirements of Rule 9(b)). Previously, the Court dismissed those claims with leave to amend, because Plaintiffs did not plead that they had read or relied on ICBINBS's label or nutrition panel. Now Plaintiffs plead that they read the fat and calorie claims on the front label, as well as the back label and nutritional panel, and that they relied on those

---

[5] Defendant also argues that Plaintiffs' UCL and CLRA claims are barred by the "safe harbor" doctrine, which provides that a defendant is not liable for conduct that is permitted by another law. Mot. at 19 (citing Knevelbaard Dairies v. Kraft Foods, Inc., 232 F.3d 979, 994 (9th Cir. 2000)). The Court finds that Plaintiffs' UCL and CLRA claims are not barred by the safe harbor doctrine to the extent that they are predicated on Defendant's failure to include an asterisk in the ingredients list and a notation that certain ingredients add some amount of fat, since such labeling practices are not expressly permitted by FDA regulations.

United States District Court
For the Northern District of California

1   statements when making their purchases.   SAC ¶¶ 65-72.

2        Defendant asserts that Plaintiffs are impermissibly vague

3   about their inspection of the nutritional panel in the context of

4   their asterisk claim.   Defendant notes that Plaintiffs do not

5   allege that they read the list of ingredients.   This, according to

6   Defendant, renders their claims implausible: no reasonable consumer

7   would read an ingredient list, note the presence of liquid soybean

8   oil and buttermilk, and then conclude that the entire product

9   contained no fat.   Defendant adds that if it were true that

10  Plaintiffs did not read the ingredients list, they could not have

11  been misled by a disclaimer they did not see.

12       The Court finds Plaintiffs' pleadings acceptable under Rule

13  9(b).   First, the Court declines to require Plaintiffs to plead a

14  magic phrase -- "ingredients list" -- when they have made

15  sufficiently clear that they read the back label of the product,

16  including the ingredients list.   Second, whether Plaintiffs were

17  actually misled and harmed by the placement of the asterisk or the

18  list of ingredients and whether a reasonable consumer would have

19  been misled by these facts are all questions not suitable for

20  resolution at the motion to dismiss stage.   And as a pleading

21  matter, it is not inconceivable that a customer would examine the

22  nutrition panel of a product and would decline to purchase that

23  product if it contained even a "trivial" or "insignificant" amount

24  of fat per serving.[6]   The ingredient list does state that sweet

25  _____

26  [6]  In Williams v. Gerber Products Co., 552 F.3d 934, 939 (9th Cir.
    2008), the Ninth Circuit held that "reasonable consumers should
    [not] be expected to look beyond misleading representations on the
27  front of the box to discover the truth from the ingredient list in
    small print on the side of the box."  Plaintiff's asterisk claim is
28  distinct from the claim at issue in Williams since the governing
    FDA regulation here, 21 C.F.R. § 101.62(b), expressly allows food

United States District Court
For the Northern District of California

1   cream buttermilk "adds a dietarily insignificant amount of
2   cholesterol," but it makes no such disclosure about liquid soybean
3   oil, which Plaintiffs allege to be a fat.  See 21 C.F.R. § 101.62;
4   see also SAC Figures 1, 2.  Plaintiffs have sufficiently alleged
5   fraud-based claims based on this allegation, and the truth of those
6   claims -- as well as whether a reasonable consumer would be misled
7   -- are fact disputes not appropriate for resolution at this stage.

8       As the Court stated in the July 9 Order, Plaintiffs' tort
9   claims based on violations of the FDCA alone or on preempted
10  theories are precluded, but causes of action premised on the
11  asterisk claim may proceed.

12              **2.   Breach of Express Warranty**

13      Plaintiffs' claim for breach of express warranty is predicated
14  on the allegation that Defendant expressly warranted that ICBINBS
15  is "0 Fat" and "0 Calories."  SAC ¶¶ 103-08.  The Court held in the
16  July 9 Order that Plaintiffs' express warranty claim could only be
17  based on the asterisk claim, but since that claim was not
18  predicated on any kind of affirmative representation, the Court
19  dismissed the warranty claim with leave to amend.  Plaintiffs have
20  now pled reliance as to the asterisk claim -- i.e., that they
21  relied on the absence of a clarifying asterisk on ICBINBS's back
22  label -- but the problem with this theory as to their warranty
23  claim is that it relies on the absence of a statement, whereas a
24  warranty is necessarily an affirmative statement about a product.
25  This cannot be the basis of a warranty claim.  Further, Plaintiffs'
26  other bases for the claim are preempted.  Plaintiffs' breach of
27
28  manufacturers to clarify representations on the front label through
    the use of fine print disclosures on the nutrition panel.

1  express warranty claim is DISMISSED with prejudice.

2  **3.   Other States' Consumer Protection Statutes**

3  Finally, Defendant argues that Plaintiffs' non-California

4  claims must be dismissed because the alleged misconduct was either

5  permissible by law or occurred outside the target state, depriving

6  Plaintiffs of standing.

7  The Ninth Circuit has held that "[e]ach class member's

8  consumer protection claim should be governed by the consumer

9  protection laws of the jurisdiction in which the transaction took

10  place." Mazza v. Am. Honda Motor Co., Inc., 666 F.3d 581, 594 (9th

11  Cir. 2012). Thus, "[w]here . . . a representative plaintiff is

12  lacking for a particular state, all claims based on that state's

13  laws are subject to dismissal." Granfield v. NVIDIA Corp., C 11-

14  05403 JW, 2012 WL 2847575, at *4 (N.D. Cal. July 11, 2012)

15  (quotations omitted). In the July 9 Order, the Court dismissed

16  Plaintiffs' non-California claims because Plaintiffs did not allege

17  to have purchased ICBINBS outside California, so they did not have

18  standing to assert claims under other states' consumer protection

19  laws.[7]

20  Now Plaintiffs have added Plaintiff Wood, who alleges a

21  violation of the MMPA based on her Missouri purchases of ICBINBS.

22  The Court finds that Plaintiffs' MMPA claim may go forward at this

23  stage, regardless of Defendant's contention that the alleged

24  misconduct is authorized by law. As noted above, Plaintiffs'

25  causes of action based on the asterisk claim are not authorized by

26

27  [7] This is an issue suitable to determination at the motion to
dismiss stage because the matter is plain on the face of the

28  pleadings. Gen. Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 160
(1982).

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1   any law.  See supra, note 5; cf. Mot. at 19 (contending that the

2   allegedly deceptive practices are permissible).

3        As to Plaintiffs' NJCFA claim, Plaintiffs argue that

4   determination of class action standing should await a motion for

5   class certification.  The Court finds otherwise: on the face of the

6   pleadings, Plaintiffs have no connection whatsoever to New Jersey.

7   Classes cannot bring claims on behalf of individuals they do not

8   represent, and if a representative plaintiff is lacking for a

9   particular state, claims based on that state's laws are subject to

10  dismissal.  Granfield, 2012 WL 2847575, at *4; see also In re Flash

11  Memory Antitrust Litig., 643 F. Supp. 2d 1133, 1164 (N.D. Cal.

12  2009).

13       Accordingly, Plaintiffs' NJCFA claim is DISMISSED.  Plaintiffs

14  have leave to amend their complaint to join representative class

15  members, to the extent that doing so would be consistent with this

16  Order.

17  **C.   Plaintiffs' Motion for Leave to Amend**

18       Plaintiffs include in their opposition brief a motion for

19  leave to amend their pleadings.  They attached -- and, strangely,

20  cited throughout their opposition brief -- a proposed third amended

21  complaint.  Having reviewed Plaintiffs' arguments in favor of

22  amendment, as well as the proposed third amended complaint, the

23  Court DENIES Plaintiffs' motion.  It would be futile, because none

24  of Plaintiffs' proposed additional allegations, see Opp'n at 24-25,

25  would alter the Court's holdings.  Plaintiffs customary consumption

26  argument is fully addressed here, as are Plaintiffs' contentions

27  about how many sprays should be measured as serving sizes.  Id.

28  Claims based on fat-free representations on the front label are

either preempted as a matter of law, as discussed <u>supra</u>, or fall under the permissible asterisk claim.  <u>Id.</u>  And the Court does not find it necessary that Plaintiffs refer to the "ingredient list" specifically, as noted <u>supra</u>.

**V.  <u>CONCLUSION</u>**

As explained above, Defendant Unilever United States, Inc.'s motion to dismiss is GRANTED in part and DENIED in part.  The Court finds that Plaintiffs Kym Pardini and Carrie Wood's claims are preempted to the extent that they are based on the allegation that Defendant uses illegal serving sizes and makes false nutrient content claims.  Plaintiffs' claims are not preempted to the extent that they are predicated on Defendant's failure to provide a notation on the nutrition panel that certain ingredients contain fat (the "asterisk claim").

Plaintiffs' claims for intentional misrepresentation, fraud by concealment, violation of the UCL, violation of the CLRA, breach of express warranty, and violation of other states' consumer protection statutes are undisturbed to the extent that they rely on Plaintiffs' asterisk claim, but are otherwise DISMISSED WITH PREJUDICE.  Plaintiffs' express warranty claim is DISMISSED WITH PREJUDICE.  Plaintiffs' NJCFA claim is DISMISSED.  Plaintiffs have leave to amend their complaint, but only to add a representative class member from New Jersey.

///

///

///

///

1    If Plaintiffs choose to amend, they must file their amended

2  complaint within thirty (30) days of this Order's signature date.

3  Otherwise Plaintiffs' NJCFA claim will be dismissed with prejudice.

4

5    IT IS SO ORDERED.

6  Dated: January 22, 2014     

7                                    UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28