STEVE W. BERMAN (*pro hac vice*)
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594
E-mail: steve@hbsslaw.com

CHRISTOPHER R. PITOUN (SBN 290235)
HAGENS BERMAN SOBOL SHAPIRO LLP
301 North Lake Avenue, Suite 920
Pasadena, CA 91101
Telephone: (213) 330-7150
Facsimile: (213) 330-7152
E-mail: christopherp@hbsslaw.com

UREKA E. IDSTROM (*pro hac vice*)
THE EUREKA LAW FIRM
5606 Belinder Road
Fairway, KS 66205
Telephone: (816) 665-3515
E-mail: uidstrom@eurekalawfirm.com

*Attorneys for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### OAKLAND DIVISION

| | |
|---|---|
| KYM PARDINI, and CARRIE WOOD on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNILEVER UNITED STATES, INC., a Delaware corporation,<br><br>Defendant. | No. 3:13-CV-01675-JSW<br><br>**JOINT CASE MANAGEMENT STATEMENT** |

The parties to the above-entitled action jointly submit this JOINT CASE MANAGEMENT STATEMENT & PROPOSED ORDER pursuant to this Court's Order regarding Joint Status Report dated November 22, 2017and Civil Local Rule 16-9.

## I. JURISDICTION AND SERVICE

No issues exist regarding jurisdiction or service.

## II. FACTS

Plaintiffs' Position:

Defendant Unilever United States, Inc. sells and markets I Can't Believe It's Not Butter! Spray ("ICBINB"), a butter-flavored topping, as having "0 g fat" and "0 calories" – claims which Unilever does not dispute are untrue. In reality, a bottle of ICBINB contains 1160 calories and 124 grams of fat.

Plaintiffs Kym Pardini and Carrie Wood allege on behalf of themselves and similarly situated consumers that Unilever's "0 g fat" and "0 calories" claims are deceptive and misleading because they are literally false. Plaintiff further alleges that: (1) Unilever used inadequate and unlawful serving sizes (e.g., "1 spray") that do not reflect amounts customarily consumed so that it could round-down its fat and calorie disclosures to "zero;" and (2) failed to include an asterisk disclosing that ICBINB actually contains fat when making a "0 g fat" claim on the front label. Plaintiffs bought this product, and in fact paid a premium for it, because they believed these false claims. They had no reason to doubt the accuracy of Unilever's label; a label that not only violates a number of state laws but also the Federal Food, Drug and Cosmetic Act and FDA regulations.

ICBINB is a liquid margarine sold to consumers in pump-action squirt bottles. Defendant promotes and labels ICBINB as a butter-flavored topping (or a buttery "spread"). It is sold alongside butter and margarine in the refrigerated section of grocery stores across America. Although ICBINB costs considerably more than margarine and butter, its sales are staggering. The reason for ICBINB's success: ICBINB is labeled and marketed as "0 g fat" and "0 calories" – claims which are made in the nutritional panel and repeated on the front label.

ICBINB lists two serving sizes in the nutritional panel: "1 spray for topping, 0.2 g" and "5 sprays for cooking, 1 g." Unlike non-stick sprays (e.g. Pam®), consumers squirt ICBINB directly onto their food, and they do so in significantly larger amounts than what's listed in ICBINB's "serving size" panel because in practice, one spray, approximately $1/44^{th}$ teaspoon of liquid margarine, is negligible as a butter topping and five sprays, approximately $1/9^{th}$ teaspoon of liquid margarine, is inadequate to replace butter as a cooking-medium.

Were it properly labeled with the serving sizes mandated by the FDA according to its customary usage, Unilever could not "round down" to claim "Calories 0" or "Total Fat 0g" in the nutrition panel and "0 calories per serving" and "0 g fat, (0g saturated fat), 0g Trans Fat per serving" on the front label.

In addition, Unilever failed to include an asterisk indicating that each serving size (illegally sized or not) actually contains fat. As this court explained, "the clear intent of the regulation is to provide consumers with a warning that a product contains some fat, even though it is labeled as 'fat free'." ECF No. 24 at 16. Because the asterisk is a condition of making a fat-free claim outside of the nutritional panel, FDA regulations did not permit Unilever to claim "0 g fat, (0g saturated fat), 0g Trans Fat per serving" on the front label of ICBINB – irrespective of the correct serving size.

Defendant's Position:

This case involves a quintessential regulatory infraction claim. Plaintiffs complain about a missing asterisk on the back of a label, which they claim was required by the FDA. Plaintiffs originally sued over broader allegations, claiming that Unilever's "I Can't Believe It's Not Butter Spray®" improperly states that it contains 0 g fat and 0 calories per serving based on serving sizes Plaintiffs believed were too small. The Court dismissed those claims as expressly preempted— twice. The only issue remaining is whether historical labels (which Unilever believes are limited to a five month period) should have included an asterisk next to the ingredient list on the back panel, noting that certain ingredients contain a "trivial" or "insignificant" amount of fat, and, if so, whether the absence of this back-of-label asterisk was material and/or misleading to consumers.

On August 15, 2012, Plaintiff Carrie Wood filed a class action in the Western District of Missouri called *Wood v. Unilever United States, Inc.*, No. 4:12-cv-01066-DGK (W.D. Mo.). After the parties briefed a motion to dismiss and engaged in discovery, Ms. Wood voluntarily dismissed her case. The court ordered dismissal on April 12, 2013, and that same day Plaintiff's counsel filed *Pardini* in the Northern District of California on behalf of a new plaintiff, Ms. Pardini. The case was identical.

On July 9, 2013, the Court granted Defendant's motion to dismiss *Pardini*. It found that Ms. Pardini's serving size claims and nutrient content claims were expressly preempted and that her asterisk claims were implausible because Plaintiff did not allege that she read and relied on the back of the label. (Order Granting Motion to Dismiss, July 9, 2013 (ECF. 24) ("Order"), 19:9-11 ("Plaintiff has not pled that she ever looked at the nutrition panel. As such, it is implausible that she was deceived by its lack of disclosures.").) The Court also dismissed with prejudice Plaintiffs' unjust enrichment claim, finding it was not a separate cause of action and was duplicative of the restitution remedy Plaintiffs requested under their consumer protection claim regardless. (*Id.*, 20:14-16.)

Plaintiffs Pardini and Wood then jointly filed a First Amended Complaint on August 8, 2013, which included Ms. Wood's resurrected claims under the MMPA, as well as a claim under the NJCFA. On September 20, 2013, Plaintiffs filed a Second Amended Complaint, amending their CLRA claim to allege damages. Plaintiffs now alleged that they reviewed the nutrition panel on the back of the label. Unilever moved to dismiss again.

On January 22, 2014, the Court granted in part and denied in part the motion to dismiss. The Court again found Plaintiffs' serving size and nutrient content claims preempted and dismissed with prejudice all causes of action that rely on those claims. The Court also dismissed with prejudice Plaintiffs' express warranty claim and NJCFA claim. The only thing left is the "missing asterisk" claim, as to which the Court declined to rule if the asterisk would be material or misleading to a reasonable consumer.

On April 15, 2015, the Court granted Plaintiffs' motion to stay the case pending the Ninth Circuit's decision in *Jones v ConAgra Foods*. On November 3, 2015, the case was reassigned from Judge Conti to Judge White. (ECF No. 61.) On August 14, 2017, the Ninth Circuit entered an order dismissing the *Jones* appeal with prejudice under Federal Rule of Appellate Procedure 42(b). *See Jones v. ConAgra*, No. 14-16327, ECF. No. 81. Following the decision, the Court lifted the stay on November 22, 2017.

In the parties' December 29, 2017 Joint Case Management Statement, Plaintiffs indicated that they were considering seeking reconsideration of the Court's rulings on Unilever's motions to dismiss based on a number of "relevant Ninth Circuit decisions" issued since the Court's orders. (ECF No. 74, 5:13-20.) On March 16, 2018, close to three months later, Plaintiffs filed a motion seeking leave for reconsideration of the Court's preemption and unjust enrichment decisions based on Ninth Circuit authority issued more than three years prior, and before the Court granted Plaintiffs' motion to stay. (*See* ECF. No. 76.) Defendant opposed on the grounds that Plaintiffs motion is untimely and meritless. (ECF. No. 78.)

### III.    LEGAL ISSUES

Plaintiffs' Position:

Under the FDA's reference table (established at 21 C.F.R. § 101.12(b)(2)), the correct reference amount for a serving size is based on the major intended use of the food. The reference amount for a substitute food such as a "low calorie" version shall be the same as the food for which it is offered as a substitute. 21 C.F.R. § 101.12(d). As set forth above, ICBINB is primarily intended to be—and is—used as a butter alternative (and it is a margarine and/or spread), and therefore, the correct reference amount for the serving size of ICBINB is the reference amount for the "butter, margarine, oil, and shortening" category.

Plaintiffs contend that Unilever's labels are not consistent with the FDA regulations (1) because ICBINB does not fit within the FDA "spray type" category, intended for non-stick products used only to lubricate cookware, such as PAM, and (2) because ICBINB failed to include an asterisk which would have alerted consumers to the dubious nature of its claims. The mere fact

1    that Unilever refers to its squirt product as a "spray" is unimportant. In any event, Unilever's own
2    serving size definitions would defeat the purpose of the FDA regulations' insistence on objective
3    and uniform food labeling because ICBINB is used as a substitute for butter in topping and cooking
4    applications.   It is not used or promoted as a substitute for PAM.
5           On May 14, 2013 and October 2, 2013, Unilever filed motions to dismiss on preemption
6    grounds.  Plaintiffs argued that express preemption under the NLEA and FDCA does not apply
7    here since Unilever's labeling both violates FDA regulations and misleads consumers in violation
8    of state law.  As such, Plaintiffs' state law claims do not threaten to impose any requirements on
9    Unilever that differ from those required by FDA regulations.
10          On January 22, 2014, this Court granted in part and denied in part Unilever's motion to
11   dismiss.  While this Court dismissed Plaintiffs' claim that Unilever used unlawful serving sizes, it
12   declined to dismiss claims based on Unilever's failure to include an asterisk disclosing the presence
13   of fat. 21 C.F.R. 101.62(b) provides that if the customary consumption of a product is less than 0.5
14   grams of fat per serving, the product may be labeled "zero fat" so long as the nutrition panel
15   denotes the ingredients that contain fat with an asterisk and an explanatory statement.  The Court
16   explained, "the clear intent of the regulation is to provide consumers with a warning that a product
17   contains some amount of fat, even though it is labeled as 'fat free.'  Defendant's interpretation
18   would essentially eviscerate that requirement." ECF No. 24 at 16.
19          The asterisk requirement is not a mere technical violation. *See* Pls' Brief in Opposition to
20   Unilever United States, Inc.'s Mot. to Dismiss, ECF No. 15 at 11 (arguing that that noncompliance
21   with the FDCA regime misled and thereby harmed consumers). It is a condition of making a "0 g
22   fat" claim on the front label where the product actually contains fat and protects consumers from
23   being misled by fat-free claims. Whether Defendant's "0 g fat" claims misled consumers remains a
24   legal issue in this case in light of Unilever's failure to disclose that this product actually contains
25   fat with an explanatory statement.
26          Since this Court ruled on Defendant's Motion to Dismiss, the Ninth Circuit held that under
27   the serving size regulations at issue here, a factual dispute as to how a product is classified cannot

be decided on a motion to dismiss on preemption grounds because it depends on evidence of customary consumption. *Lilly v. ConAgra Foods*, 743 F.3d 662 (9th Cir. 2014). Because the Court did not have the benefit of the *Lilly* decision at the time it ruled on Defendant's motion to dismiss, Plaintiffs moved for leave to file a motion for reconsideration. *See* ECF No. 76. Plaintiffs believe that a pending motion for reconsideration should not be re-argued in a case management statement and have asked defense counsel to remove these arguments. Plaintiffs would like to address the "timeliness" of its motion in a reply.

Plaintiffs also believe that the following legal issues will be relevant going forward: (a) Whether Defendant misrepresented or omitted material facts in connection with the promotion, marketing, advertising, packaging, labeling and sale of ICBINB; (b) Whether Defendant's nondisclosures and misrepresentations would be material to a reasonable consumer; (c) Whether the nondisclosures and misrepresentations were likely to deceive a reasonable consumer in violation of the consumer protection statutes of the California and Missouri; (d) Whether Unilever breached an express warranty made to Plaintiffs and the Class; (e) Whether Unilever intentionally misrepresented that ICBINB is "fat free" by failing to include the asterisk as required by 21 C.F.R. 101.62(b); (f) Whether Defendant's unlawful, unfair and/or deceptive practices harmed Plaintiffs and the members of the Class; and (g) Whether Plaintiffs and the members of the Class are entitled to damages, restitution, and/or equitable or injunctive relief.

Defendant's Position:

In its January 22, 2014 Order, this Court found that Plaintiffs' serving size claims were expressly preempted because ICBINB's serving sizes—which are based on "spray category" requirements—are consistent with FDA regulations, and that Plaintiffs' claim that the spray products are instead "spreads" or equivalent to butter—and thus require serving sizes stated in tablespoons—was implausible on its face. (*See* Order 8:1-13:5.) Plaintiffs' nutrient content claims also failed on these grounds. (*Id.* 13:10-19.) Because the Court had previously dismissed these claims in July 2013, and because Plaintiffs had again failed to state a claim, the Court dismissed

both the serving size and nutrient content claims with prejudice. (*Id.* 13:6-8; 13:10-12.) The only remaining claim in this case is the alleged "missing asterisk." (*See Id.* 15:28-16:1.)

In seeking leave for reconsideration more than four years after the Court's orders—and based on Ninth Circuit authority from more than three years ago—Plaintiffs' motion is untimely. Plaintiffs violate the Local Rules requiring that all motions for leave for reconsideration be made with "reasonable diligence." N.D. Cal. Civ. L. R. 7-9(b).

Plaintiffs' request for reconsideration is also meritless. Plaintiffs argue that *Lilly*, 743 F.3d at 662, requires reversal of the Court's preemption decisions, claiming *Lilly* "changed the law" to preclude dismissal of "serving size" claims on preemption grounds because this is a question of fact. Wrong. The court in *Lilly* applied established law and found—based on *uncontroverted* facts—that the district court erred as a matter of *law* in its preemption decision. *See Id.* at 665. Here, by contrast, Plaintiffs offered only *implausible* facts to suggest that the spray products should instead be classified as butter or "spreads." As Unilever argued in opposing Plaintiffs' motion, *Lilly* simply shows what Plaintiffs' case is not. (*See* ECF No. 78, 6:25-7:8.) *Lilly* is not a "change" in law as required for reconsideration, nor does it support reversing the Court's decision.

Plaintiffs' request for reconsideration of the Court's unjust enrichment decision based on *Astiana*, 783 F.3d at 753, is also unwarranted, as Plaintiffs are seeking the same remedy for unjust enrichment—restitution—under their consumer protection claims. As Unilever explained in opposing Plaintiffs' request for leave, because Plaintiffs' unjust enrichment claim is duplicative of their consumer protection claims, reconsideration is unwarranted. (ECF No. 78, 8:22-9:2 (citing *Lanovaz v. Twinings N. Am., Inc.*, No. 5:12-CV-02646-RMW, 2015 WL 3627015, at *5 (N.D. Cal. June 10, 2015) (denying reconsideration of dismissal of unjust enrichment claims based on *Astiana* because remedies sought under such claims were duplicative of restitution remedies sought under consumer protection claims).)

Plaintiffs have not—and cannot—show how any of these decisions constitute a "change of law" justifying reconsideration under the local rules. (*See* N.D. Cal. Civ. L.R. 7-9(b).) They fall

short of the high bar necessary to show reconsideration is warranted. The Court should deny their request for leave.

Because the Court properly dismissed Plaintiffs' serving size and nutrient content claims, as well as their unjust enrichment claims, only the following legal issues remain: (i) whether Plaintiffs' purported class is ascertainable and sufficiently numerous; (ii) whether there are common questions as to law and fact among the class; (iii) whether Plaintiffs assert claims that are typical of the class; (iv) whether Plaintiffs are adequate class representatives; (v) whether questions of law and fact predominate over individual issues; (vi) whether a class action is superior to other methods of adjudication; (vii) whether Plaintiffs have suffered an injury by purchasing the product; (viii) whether Plaintiffs' alleged "asterisk" claim has merit; (ix) whether Plaintiffs reasonably relied on the alleged omission of the asterisk; (x) whether the alleged omission is material to reasonable consumers and would deceive reasonable consumers; and (xi) whether there is an appropriate method to determine monetary relief for class members, and what that relief might be.

### IV. MOTIONS

On January 22, 2014, this Court granted in part and denied in part Unilever's Motion to Dismiss the Second Amended Complaint. *See* ECF No. 38. On April 15, 2015, this Court granted Plaintiffs' Motion to Stay. *See* ECF No. 59. The Court lifted the stay on November 22, 2017 per the parties' joint stipulation. *See* ECF No. 73. On March 16, 2018, Plaintiffs moved for leave to file a motion for reconsideration. *See* ECF No. 76. On March 23, 2018, Defendant opposed Plaintiffs' request for leave to file a motion for reconsideration. *See* ECF No. 78.

### V. AMENDMENT OF PLEADINGS

<u>Plaintiffs' Position</u>: On August 8, 2013, Plaintiff filed an Amended Class Action Complaint, amending Paragraph 134 of the Complaint to include a request for damages under the CLRA. On September 30, 2013, Plaintiffs filed a Second Amended Class Action Complaint ("SAC") pursuant to the Court's order granting Unilever's motion to dismiss with leave to amend. On September 30, 2013, Plaintiffs requested leave to file a third amended complaint. That request

-8-
JOINT CASE MANAGEMENT STATEMENT, Case No.:3:13-CV-01675-JSW

was denied. Plaintiffs are evaluating whether to request leave to amend the SAC in light of binding Ninth Circuit precedent issued since this case was stayed. *See Ebner v. Fresh, Inc.*, 838 F.3d 958 (9th Cir. 2016).

Defendant's Position: In its January 22, 2014 Order, this Court denied Plaintiffs' Motion for Leave to Amend, finding "[i]t would be futile, because none of Plaintiffs' proposed additional allegations, [citation], would alter the Court's." (Order (ECF No. 38 ), 20:23-25.) That is because, as the Court explained, Plaintiffs' serving size and nutrient content claims were preempted, which was true regardless of the facts Plaintiffs proposed to add. (*Id.*, 20:25-21:4.) In fact, Plaintiffs' own authority supports this proposition. *See Ebner*, 838 F.3d at 968 (finding that leave to amend should not be granted where amendment would be futile).

As described above, Plaintiffs have failed to demonstrate why reconsideration of this decision is warranted. The pleadings in this case are settled, and the case should proceed to class certification.

## VI. EVIDENCE PRESERVATION

Plaintiffs' Position: Plaintiffs have reviewed the ESI Guidelines for the Northern District of California and met and conferred with Defendants pursuant to Rule 26(f) regarding document preservation. Defendant has provided some general information indicating that it has taken steps toward preserving documents, including circulating a document retention letter. Defendant has agreed to provide details about the document retention letter and to identify the custodians to whom the retention letter was sent. Plaintiffs have been instructed by her counsel to retain documents relating to the product at issue in this case.

Defendant's Position: Defendant has represented that steps have been taken to preserve evidence relevant to this litigation. It intends to comply with the Northern District's Guidelines for the Discovery of Electronically Stored Information.

-9-
JOINT CASE MANAGEMENT STATEMENT, Case No.:3:13-CV-01675-JSW

## VII. DISCLOSURES

The parties exchanged their initial disclosures pursuant to Federal Rule of Civil Procedure 26 on or about August 8, 2014.

## VIII. DISCOVERY

Plaintiffs' Position: The parties held their Rule 26(f) conference on July 17, 2014. Defendant agreed to provide plaintiff with information regarding: (i) the name and/or general job tiles or description of custodians for whom ESI will be produced; and (ii) the number of custodians for whom ESI will be preserved. Defendant plans to use search terms to locate responsive documents and agreed to confer with Plaintiffs' counsel in the process of selecting appropriate terms to search. The parties agreed to enter into a stipulated protocol regarding discovery of ESI. However, to date, the parties have not yet formulated an ESI protocol. Plaintiffs served Defendant with written discovery on August 18, 2014. On September 22, 2014, Defendant served written responses to Plaintiff's written discovery. Defendant's responses were largely objections and did not include the production of a single document or a substantive response to a single written interrogatory. Plaintiffs attempted to meet and confer with Defendant regarding its document production in October and December of 2014 during which time Defendant represented that it was "actively collecting… and reviewing documents" to be produced on a rolling basis. But on December 11, 2014 (two months before the class certification deadline), Defendant circulated a list of search terms that it *planned* to apply to Unilever's document collections. To date, no documents have been produced. No depositions have been taken. Although the parties have consistently worked in good faith to resolve their disputes, because production has not yet begun, Plaintiffs have no basis for determining how much time will be needed for discovery in advance of class certification.

Defendant's Position:

Defendant began the e-discovery process in connection with the first-filed *Wood* case in Missouri and it collected and reviewed additional documents in connection with Plaintiffs' consolidated case. Defendant met and conferred with Plaintiff regarding the search terms it

planned to use to identify responsive materials as well as to finalize a Protective Order. Defendant was close to finalizing its review process in April 2015, and the parties filed a Stipulated Protective order on April 14, 2015. (ECF No. 58.) The Court stayed the case—at Plaintiffs' request—on April 15, 2015 (ECF No. 59), and entered the Protective Order on April 20, 2015. (ECF No. 60.) Now that the Court has lifted the stay, Defendant is reactivating its databases and preparing to produce documents in response to Plaintiffs' Requests. Plaintiffs' recent motion for leave to seek reconsideration, however, may impact discovery. Setting deadlines for discovery is premature pending the Court's decision on Plaintiffs' motion. Defendant also plans to re-notice Plaintiffs' depositions, which it originally noticed in October 2014, for June and/or July of 2018.

## IX. CLASS ACTION

Plaintiffs Pardini and Wood assert that their claims are viable under Fed. R. Civ. P. 23(b)(2) because Defendant has acted on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole. Their claims are also viable under Fed. R. Civ. P. 23(b)(3) because common questions of law and fact substantially predominate over any questions that may affect only individual members of the Class and Subclass, including, inter alia, the following:

a. Whether Defendant misrepresented or omitted material facts in connection with the promotion, marketing, advertising, packaging, labeling and sale of ICBINB;

b. Whether Defendant's nondisclosures and misrepresentations would be material to a reasonable consumer;

c. Whether the nondisclosures and misrepresentations were likely to deceive a reasonable consumer in violation of the consumer protection statutes of the Missouri and California;

d. Whether the nondisclosures and misrepresentations constitute an unlawful business practice in violation of the UCL;

e. Whether the nondisclosures and misrepresentations constitute an unfair business practice in violation of the UCL;

f. Whether Unilever concealed, suppressed or omitted any material fact in connection with the sale or advertisement of ICBINB in violation of the MMPA;

-11-
JOINT CASE MANAGEMENT STATEMENT, Case No.:3:13-CV-01675-JSW

g. Whether Unilever breached an express warranty made to Plaintiffs and the Class;

h. Whether Unilever intentionally misrepresented the fat content of ICBINB by failing to include an asterisk as required by 21 C.F.R. 101.62(b);

i. Whether Defendant's unlawful, unfair and/or deceptive practices harmed Plaintiff and the members of the Class; and

j. Whether Defendant was unjustly enriched by its misrepresentations.

Plaintiffs maintain that there are many questions of law and fact common to the Class and Subclasses. Defendant's advertising, marketing, labeling and promotional practices were supplied uniformly to all members of the Class who were similarly affected by having purchased ICBINB for their intended and foreseeable purpose as a "fat-free" and "0 calorie" topping. Plaintiffs contend that many additional facts common to the class are within the Defendant's exclusive control and will unfold during the discovery process.

Defendant's Position: This case is not suitable for class treatment, and Defendant will oppose class certification.

## X. RELATED CASES

Plaintiffs' Position: The parties are not aware of any related cases.

Defendant's Position: Plaintiffs' counsel has brought a nearly identical case challenging ConAgra's "Parkay Spray." Counsel filed a case in Nebraska on August 13, 2012 called *Trewhitt v. ConAgra Foods, Inc.*, No. 8:12-CV-00287-JFB-TDT (D. Neb.), then filed a duplicate case in this district on March 21, 2013, and dismissed the Nebraska case four days later on March 25. *See Allen v. ConAgra Foods, Inc.,* No. 13-cv-01279-VC (N.D. Cal.). This case has not been related to *Pardini*.

## XI. RELIEF

Plaintiffs seek injunctive relief and restitution of all monies paid to Defendant as a result of its deceptive, unlawful and unfair business practices, as well as damages. The amounts involved are not presently known to Plaintiffs, but are readily calculable after discovery.

## XII. SETTLEMENT AND ADR

The parties agreed to private mediation. On March 31, 2014, the Court continued the case management conference to allow the parties to try to resolve the case through mediation. Those efforts were unavailing.

## XIII. CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES

The parties do not consent to having a magistrate judge conduct all further proceedings including trial and entry of judgment.

## XIV. OTHER REFERENCES

The parties do not believe the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

## XV. NARROWING OF ISSUES

The parties are not aware of any additional issues that can be narrowed by agreement or by motion at this time.

## XVI. EXPEDITED TRIAL PROCEDURE

The parties do not believe that this is the type of case that can be handled on an expedited basis.

## XVII. SCHEDULING

Plaintiffs' Proposed Schedule: No discovery has been produced in this case and defense counsel has indicated that it will not produce discovery until after the Court rules on Plaintiffs' motion for reconsideration. Given the work that has yet to be done, Plaintiffs propose the following deadlines (altered from the Case Management Statement submitted on December 29, 2017 to reflect the delay in production). *See* ECF No. 74.

| Event | Proposed Date |
| --- | --- |
| Close of Class Discovery | February 29, 2018 |
| Motion for Class Certification due | May 28, 2019 |

| | |
|---|---|
| Response to Class Certification | June 28, 2019 |
| Reply to Class Certification | July 29, 2019 |
| Hearing on Class Certification | September 2, 2019 at 9:00 a.m. |
| Close of Merits Discovery | December 30, 2019 |
| Expert Disclosures due | January 30, 2020 |
| Rebuttal Expert Disclosures due | March 2, 2020 |
| Dispositive Motions and Daubert Motions | March 30, 2020 |
| Opposition to Dispositive Motions and Daubert Motions | April 27, 2020 |
| Reply to Dispositive and Daubert Motions | May 18, 2020 |
| Hearing on Dipositive and Daubert Motions | June 15, 2020 |

<u>Defendant's Proposed Schedule</u>: Defendant proposes the following schedule for class certification and summary judgment:

| Event | Proposed Date |
|---|---|
| Motion for Class Certification Due | August 28, 2018 |
| Response to Class Certification | October 30, 2018 |
| Reply to Class Certification | November 27, 2018 |
| Hearing on Class Certification | December 18, 2018 at 9:00 a.m. |
| Close of Fact Discovery | March 12, 2019 |
| Opening Expert Reports Due | March 12, 2019 |
| Rebuttal Expert Reports Due | April 16, 2019 |
| Close of Expert Discovery | May 7, 2019 |
| Dispositive Motions and Daubert Motions Due | June 14, 2019 |
| Opposition to Dispositive Motions and Daubert Motions Due | July 12, 2019 |
| Reply to Dispositive and Daubert Motions | July 26, 2019 |
| Hearing on Dispositive and Daubert Motions | August 20, 2019 |

Plaintiffs do not explain why they need a year of additional discovery and more than a year to file for class certification. There is no need. Defendant has already collected and reviewed responsive documents and will produce those documents shortly. Six months is more than enough time for Plaintiffs to review these materials and file for class certification. The Court should reject Plaintiffs' relaxed schedule, especially in light of the fact that this case has been pending for almost five years.

## XVIII. TRIAL

<u>Plaintiffs' Position</u>: Plaintiffs have requested a jury trial, and believe that trial will take between seven to ten days.

<u>Defendant's Positon</u>: Defendant believes trial will take 4-7 days.

## XIX. DISCLOSURE OF INTERESTED NON-PARTY ENTITIES OR PERSONS

<u>Plaintiffs' Position</u>: Plaintiffs are unaware of any interested non-party entities or persons.

<u>Defendant's Position</u>: Defendant filed a Certificate of Interested Parties on April 24, 2013 (Dkt. No. 11.) Defendant restates that the parent company of Unilever United States, Inc. is UNUS Holding B.V., which is an indirectly wholly owned subsidiary of Unilever N.V. and Unilever PLC. In addition, Conopco, Inc. dba Unilever, a wholly owned subsidiary of Unilever United States, Inc., has an interest in this litigation.

## XX. OTHER

The parties have agreed that electronic service via e-mail will be deemed adequate service of documents, equivalent to service via first class mail.

| | | |
|---|---|---|
| 1 | DATED: March 30, 2018 | THE EUREKA LAW FIRM |
| 2 | | By: Ureka Idstrom_____ |
| 3 | | |
| 4 | | Ureka E. Idstrom, (*pro hac vice*)<br>THE EUREKA LAW FIRM |
| 5 | | 5606 Belinder Road<br>Fairway, KS 66205 |
| 6 | | Telephone: (816) 665-3515<br>E-mail: uidstrom@eurekalawfirm.com |
| 7 | | |
| 8 | | Christopher Pitoun (SBN 290235)<br>HAGENS BERMAN SOBOL SHAPIRO LLP |
| 9 | | 301 North Lake Avenue, Suite920<br>Pasadena, CA 91101 |
| 10 | | Telephone: (213) 330-7150<br>E-mail: christopherp@hbsslaw.com |
| 11 | | |
| 12 | | Steve W. Berman (*pro hac vice*)<br>HAGENS BERMAN SOBOL SHAPIRO LLP |
| 13 | | 1918 Eighth Avenue, Suite 3300<br>Seattle, WA 98101 |
| 14 | | Telephone: (206) 623-7292<br>E-mail: steve@hbsslaw.com |
| 15 | | |
| 16 | | *Attorneys for Plaintiff and the Proposed Class* |

# **CERTIFICATE OF SERVICE**

I hereby certify that on March 30, 2018, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List, and I hereby certify that I have caused to be mailed a paper copy of the foregoing document via the United States Postal Service to the non-CM/ECF participants indicated on the Manual Notice List generated by the CM/ECF system.

/s/ Ureka Idstrom